## JOSEPHINE HILGERT, Respondent, v. BARBER ASPHALT PAVING COMPANY, Appellant.

Kansas City Court of Appeals, November 9, 1903 and May 30, 1904.

1. **MUNICIPAL CORPORATIONS: Council: Repeal: Statutory Construction: Taxbills.** The repealing and amendatory act of March 30, 1901, which substituted a two house assembly instead of the common council theretofore provided by section 5490, Revised Statutes 1899, did not have the effect to abolish the common council until the April election thereafter, and the council had full authority to validate by confirmatory ordinance contracts entered into for street improvements.

2. ———: ———: ———: ———: ———. Where the council in good faith continued to act as the legislative department of the municipality, they were *de facto* officers and their confirmatory ordinances valid.

3. ———: **Street Improvements: Time: Taxbills.** Where the ordinance for street improvements specified a definite time for its completion or the contract makes time the essence thereof, the work should be completed within the time specified or the taxbill will be void; but where no definite time is fixed by ordinance or contract the improvements should be completed within a reasonable time.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

REVERSED.

*Scarritt, Griffith & Jones* and *R. A. Brown* for appellant.

Filed lengthy argument.

*Culver & Phillip* for respondent.

Also filed argument.

STATEMENT BY SMITH, P. J.

This is a suit in equity. The substantive allegations of the petition were:

1. That the city of St. Joseph was a city of the second class and that Ashland avenue was a public street in said city on which certain lots, of which plaintiff was owner in fee, abutted.

2. That on January 26, 1901, the common council of said city passed and the mayor approved special ordinance No. 2936 by the first section of which Ashland avenue from the north line of Frederick avenue to the east city limits, and its intersections with other streets and alleys was ordered to "be paved to the full width of the roadway with asphalt pavement curbed and the sidewalk laid in accordance with the specifications therefor on file in the office of the city engineer," etc. By the

second section it was declared that the cost of said work should be charged as a special tax against the real estate abutting on that part of said street ordered to be improved. And by the third section the improvement was ordered to be paid for in special taxbills, etc.

3. That the specifications referred to in said ordinance amongst other things, *provided* that the improvement be completed in ninety days after the approval of the contract was confirmed by the common council of the said city.

4. That Ratcliffe, who pretended to be city engineer of said city, awarded the contract to the defendant, when he was not in fact at that time city engineer and was without authority to award said contract to defendant; that said contract was subject to the confirmation of the common council of said city and that no contract was entered into between said city and defendant for the performance of the work ordered by said special ordinance other than that awarded by the said Ratcliffe.

5. That by the express terms of said pretended contract defendant was required to furnish all the labor and material to pave said Ashland avenue and to asphalt and curb the same and lay sidewalks thereon, to be completed according to the said specifications within ninety days after the approval of said pretended contract by the common council.

6. That said pretended contract was never confirmed by the common council of said city.

7. That the work under said pretended contract was not completed until August, 1901, and until after the time mentioned in said specifications had expired; and that the common council of said city never at any time extended the time for the completing of the said contract.

8. That the defendant did lay an asphalt pavement on said street, but the work done and materials furnished were voluntary and not under any contract therefor with said city, and that said pavement was not laid

in conformity to the requirements of said contract— specifying in what respect.

9. The issue and delivery of the taxbills against plaintiff's lots abutting on the improved part of said street in payment of the cost of said street improvement; that each of said taxbills upon its face appears to be a valid charge and lien against said lots for the cost of said improvement and that said taxbills in truth and fact are for work done by defendant in the manner and circumstances thereinbefore stated; and that by reason thereof the said taxbills were void and constituted a cloud on the title of plaintiff to said lots.

The prayer was that each of said taxbills be declared void and that the same be cancelled and the cloud thereby created on the plaintiff's said lots be removed, and for other proper relief.

To the general denial of the answer was added the following allegations, that is to say:

"And this defendant states that thereafter, on or about the eighteenth day of March, 1901, the said city, acting by and through its officers, thereunto authorized, did award, let and enter into a certain contract with this defendant pursuant to and conformable with the terms of said ordinance No. 2936 for the improvement of that part of the said Ashland avenue, described in said ordinance, and curbing, sidewalk and paving same, which said contract was duly confirmed by ordinance of the said city on or about March 18, 1901; that by the terms of the said contract and the said ordinances said improvements were required to be laid upon and to conform to the established grade of the said street; that the grade of said street had theretofore by said city been duly established by its ordinance entitled: 'An ordinance to establish the grade of Ashland avenue,' etc., duly approved by the mayor of said city; that at the time of entering into said contract, to-wit, on March 18, 1901, said Ashland avenue had not been graded nor the

surface thereof brought to the established grade thereof, as provided in said ordinance to establish the grade thereof, and that this defendant was at the time of entering into said contract as aforesaid ignorant of the fact that said street had not been graded to the established grade thereof, and that the said street was not graded or brought to the established grade thereof until the month of July, 1901, but during all said period the surface of said street was about five feet above the established grade thereof.

"The defendant states that the said city, on or about the eighteenth day of March, 1901, entered into a contract with a certain contractor other than and who had no connection with this defendant and who was not under the direction or control of this defendant, to grade that part of Ashland avenue hereinbefore described to the established grade thereof; that said grading contractor entered upon the execution of the said street for that purpose and did not complete the grading, or certain parts thereof, until the month of July, 1901; that this defendant was at all times ready and willing, upon and after the eighteenth day of March, 1901, to enter upon said Ashland avenue and to make the improvements thereon according to and in strict compliance with the terms of the contract hereinbefore referred to between it and the said city in respect thereto.

"That the said city by its said ordinance number 2936 and the contract between it and this defendant hereinbefore referred to, agreed with this defendant to have the surface of that part of Ashland avenue described in said ordinances upon the established grade thereof on March 18, 1901, and to turn over the said street to this defendant on that date with the surface thereof coincident with the established grade thereof and to allow this defendant to take possession thereof and to proceed thereupon and thereafter with the execu-

tion of its said contract, all of which the said city failed to do, in that the surface of that part of said Ashland avenue to be improved as aforesaid was not at the established grade on March 18, 1901, nor thereafter until the month of July, 1901, and that said city, acting by and through its city engineer, refused to allow the defendant to enter upon said street for the purpose of executing its contract until the said street was brought to the established grade thereof, to-wit, until July, 1901; that the defendant at various times during said period attempted to enter upon said street and proceed with the execution of its contract, and was ordered and directed by the said city and its said engineer to cease work thereon until the said street should have been brought to the established grade thereof, which direction this defendant complied with; that this defendant, as soon as the said street was brought to the established grade thereof and as soon as it was allowed to do so by the said city, proceeded without delay to execute the work required by the terms of its said contract and did complete the same according to the said contract within a reasonable time thereafter, to-wit, within sixty days.

"Thereupon the said work was duly accepted by said city and taxbills issued in payment thereof according to the terms of said contract, and that by reason of the premises the said city and the plaintiffs should not be heard to say and are estopped to say that the work provided by the said contract to be done by this defendant was not executed and completed within the time stipulated therefor by the terms of said contract."

The decree was for plaintiff.

SMITH, P. J.—It seems to be conceded that the contract for making the improvement was not valid and effective unless confirmed by an ordinance passed by the common council. And the first question raised by the appeal is whether or not the ordinance confirming

the contract and purporting to have been passed by the common council on March 18, 1901, is valid. By section 5490, Revised Statutes, the legislative functions of the cities of the second class were vested in a common council composed of two aldermen from each ward. It is further conceded that the common council which passed said confirmatory ordinance would have been a legal body authorized by the statute—the charter of the said city—to exercise legislative functions and to confirm the said contract but for the repealing and amendatory act of March 13, 1901 (Sess. Acts 1901, p. 55), by which said section 5490 was repealed and said common council became *functus officio*. It is thus seen that five days before said confirmatory ordinance was passed by the common council it was abolished by said repealing and amendatory act and the legislative function of the city was thereby lodged in another body—a municipal assembly composed of two houses. Section 5490 of said repealing and amendatory act which was enacted in lieu of the section of that number contained in the statutes of 1899, already referred to, provided, that the members composing the two houses of the municipal assembly should be elected at the annual election on the first Tuesday after the first Monday in April in 1901 (Revised Statutes, section 5701), and meet in session on the third Monday after said election.

It is contended that from the date of the passage of the repealing and amendatory act, that is to say from the thirteenth of March until the third Monday in the April following, there was no legal officer or body in existence authorized to exercise the legislative function of the city. If this be so, then during the existence of this hiatus—this vacuum—if a pestilence had broken out in the city, or if its water or light supply had been destroyed, or if it had been visited by a disastrous fire or flood, or other calamity, and action on the part of the legislative department had been required to relieve

the situation, it could not have been had. That part of the business of the city requiring the exercise of the legislative function to carry it on would have been suspended. Public improvements which the common council had by ordinance previously ordered and the contracts for doing which had been entered into by the city engineer could not have been carried on for the reason that there was no common council, or other body, exercising the legislative function to confirm and validate such contracts. The usual and ordinary business of the city could not have been carried on. But it seems that the common council, notwithstanding the passage of said repealing and amendatory act, continued to exercise the legislative function until the April election. and that while so exercising such functions the ordinance confirming the contract in question was passed by it. The language of the emergency section of the repealing and amendatory act is to the effect "that there are cities of the second class desirous of effecting the changes herein contemplated *at the election to be held in April,* 1901," therefore the act shall be in force and take effect from its passage. By this language it is expressly made to appear that the desire of the cities of the second class was to effect certain changes contemplated by said act at the April election, 1901. By the very language employed in the act it seems clear to me that it was the intention of the Legislature by the passage of the act not to disturb the *status quo* until after that election.

It can not reasonably be supposed that the Legislature by the passage of this act intended to tie up and paralyze the public business—to cripple, disable and render cities of the class to which it relates helpless for more than a month. The language of the act clearly negatives any such legislative intention, but if such intention were doubtful or uncertain, considerations of public policy would forbid a construction productive of such consequences. I can not doubt from the language employed in it that the lawmakers intended by its enact-

ment to accomplish the change therein contemplated at the time stated in the emergency section, *and at no other time*. It has been many times declared by the Supreme Court of this State that the effects and consequences of any proposed construction of a law may properly be considered as an aid in ascertaining the probable intention of the lawgiver as expressed in it. Kane v. Railway, 112 Mo. 34; Bowers v. Smith, 111 Mo. 45; Chouteau v. Railway, 122 Mo. 375; State ex rel. v. Slover, 126 Mo. 652. And it is another familiar rule that no statute is to be construed in such a manner as to be inconvenient or against reason. Fanny v. State, 6 Mo. 122. In view of the effect—the mischievous consequences—to which we have already adverted and which would result from the construction of said act contended for by plaintiff, that is, that it had the effect on the day of its passage to abolish and overthrow the common council, I think we are justified in rejecting that construction.

But if the members of the common council after the passage of said act were not *de jure* officers, they were *de facto*. They were, it seems to me, in office under such apparent circumstances of color as would lead men to suppose them to be legal officers entitled to exercise the legislative function of the city. There is nothing to show that they did not act in good faith in continuing to exercise the legislative function. There was no other officer or body then in existence authorized by law to exercise such functions. Even though their office had been abolished and there was no longer any such office to fill, yet as there was color of right for their action as such officers; and though their offices had been abolished the new legislative officers or body had not been elected, nor organized, so that their acts so far as they affected the rights of third persons and the public were valid as the acts of a *de facto* legislative body. The members of the common council were not mere intruders or usurpers. The offices which they pretended to fill were originally legal offices, so that they were valid in their birth.

They continued after the passage of the repealing and amendatory act by common consent of the people and the government to exercise the legislative functions, and it is difficult to see why they were not at least *de facto* officers. And whatever may have been the ruling by the Supreme Court in Ex parte Snyder, 64 Mo. l. c. 62, State v. O'Brian, 68 Mo. 153; State v. Boone County, 50 Mo. 317, and the other cases cited by plaintiff, the more recent cases decided by that court (Adams v. Lindell, 72 Mo. 198 and Perkins v. Fielding, 119 Mo. 149), declare the rule as to the validation of the acts of *de facto* officers to be one of policy and may be applied not only where there is no *de jure* officer but where the legal office itself no longer exists. And this rule has been fully recognized by this court in Simpson v. McGonegal, 52 Mo. App. 540, and in Walker v. Ins. Co., 62 Mo. App. 209.

My conclusion is that the common council, notwithstanding the passage of the repealing and amendatory act of March 13, 1901, was still in existence on March 18, next following, and that it was in the lawful exercise of its legislative functions when it passed the said confirmatory ordinance; but if this was not so, that then under the facts of the case disclosed by the record the rule of validation applies to said confirmatory ordinance. It results, therefore, that in either view which I have expressed, the taxbills can not be held void on the ground that the contract for doing the work was not confirmed by an ordinance of the common council.

## II.

But it is suggested that even if the confirmatory ordinance was valid that the taxbills are still invalid for the reason that the improvement was not completed within the time required by the ordinance ordering it to be made. Adverting to the ordinance ordering the improvement, and I find that it required Ashland avenue between certain designated points thereon, "to

be paved to the full width of the roadway with an asphalt pavement, curbed and the sidewalk laid in accordance with the specifications therefor on file in the office of the city engineer.'' The specifications ·on file in the city engineer's office stated in detail the character of the material to be used in the improvements and the method of their construction, but those specifications are entirely silent as to the time within which the work is to be completed. A blank form of contract was also on file in the office of the city engineer, and that general form with the blanks appropriately filled in was subsequently used to express the terms of the agreement between the city of St. Joseph and the paving company relative to the execution of this work. This contract states that the work shall be completed to the satisfaction of the city engineer within ninety days after the approval of the contract by the common council but it does not contain a stipulation making time of its essence. This contract and the form of contract which was on file in the office of the city engineer is a complete and separate thing from the specifications. No reference is made in the original ordinance to the form of contract on file. The language of the specifications does not refer to the contract or make its terms a part of the specifications. Indeed, the contract refers to the specifications as ''attached hereto.'' And it must follow that the reference in the original ordinance to the specifications on file in the office of the city engineer does not refer to or designate the form of a contract—a separate entity—on file in that office so as by that reference to make the terms of that form of contract a part of the ordinance. And hence I hold that the form of contract above referred to was no part of the original ordinance. From this it follows that the original ordinance neither directly nor indirectly fixed any time for the completion of the work therein authorized.

Time, then, was not by the terms of this ordinance made of the essence of this transaction. And the con-

tract does not specify that the time of completion is essential, or that it shall be of the essence of the agreement.   It rather required that the contemplated street improvement should be of good quality and endure for a period of at least ten years after completion.   The trial court found, and as was, I think, proper under the testimony, that the work embraced in the contract was done and of the materials and in the manner described in said contract, ordinance and specifications, and that the same was a good, durable and substantial street pavement, curb and sidewalk of the kind required by said contract, ordinance and specifications.

The defendant did not complete the improvement within the ninety days stated in the contract.   The law is, that where a definite time for the completion of an improvement is specified in the ordinance ordering it, or, if no time be specified therein but is made of the essence of the contract by the stipulation of the parties, then, in either case, if the work be not completed within the time so specified, the taxbills will be void.   Neill v. Gates, 152 Mo. 585; Childers v. Hohnes, 68 S. W. (Mo.) 1046; Barber Asphalt Co. v. Ridge, 169 Mo. 376; Rose v. Trestrail, 62 Mo. App. 352; McQuiddy v. Brannock, 70 Mo. App. 535; Wittemore v. Sells, 76 Mo. App. 248; Safe Deposit Co. v. James, 77 Mo. App. 616; City v. Davis, 80 Mo. App. 574; Ayres v. Schmohl, 86 Mo. App. 349; Winfrey v. Linger, 89 Mo. App. 159.   As the ordinance ordering the improvement did not specify any time for the completion of the work, and as it was not made of the essence of the contract by the express stipulation of the parties thereto, it remains to be determined in what time the defendant was required to complete the improvement.

Carlin v. Cavender, 56 Mo. 286, was a suit on a special taxbill issued by the city engineer of the city of St. Louis to defray the cost of improving a street in front of the property of defendant.   The ordinance authorizing the work fixed no time for its completion.

There was a time fixed in the contract for the completion of the work but there was no stipulation making it of the essence of that contract. The work was not completed within the time limited by the contract, and this was one of the defenses pleaded and relied on in the case by the defendant property-owner. The case went to the Supreme Court where it was said by Judge WAGNER in the course of his opinion:

"There is obviously no merit in the point that the work was not completed within the time limited by the contract. There is nothing to show that time was of the essence of the contract. For prudential reasons the engineer suspended the work for a time and the contractors assented to the suspension, but when it was deemed advisable to proceed, the work was then completed and received. It does not appear that the defendant suffered any injury by the delay." Strassheim v. Jerman, 56 Mo. 104, approved the ruling made in Carlin v. Cavender.

In Ayres v. Schmohl, 86 Mo. App. 349, it was said that the vital difference between that case and Carlin v. Cavender, ante, was that in the latter the contract did not make the time prescribed of the essence of the contract, while in the former it did. It was also further said in the same case:

"Those cases (Carlin v. Cavender and Strassheim v. Jerman, 56 Mo. 104). held that where the ordinance did not fix the time and the contract did, that a failure to complete the work within the time stated in the contract did not necessarily avoid the bills, there being nothing to show that it was of the essence of the contract or the delay was unreasonable." The rulings of this court, as was said in Ayres v. Schmohl, have been that the time in which public work should be done is a legislative function and that it can not be delegated to the city engineer; and which rulings are in harmony with that made by the Supreme Court in Neill v. Gates, supra. It inevitably follows from these considerations that the

time for the completion of the work fixed by the engineer and inserted in the contract was at most but directory.    Where there is no definite time fixed for the completion of the improvement in the ordinance ordering it, and where the contract entered into in pursuance thereof does not make time of the essence of the contract, it may now be regarded as the settled law of this jurisdiction that the proceeding should be construed to require the completion of the improvement within a reasonable time.   Ayres v. Schmohl, 86 Mo. App. 349; Allen v. LaForce, 95 Mo. App. 324; Boulton v. Kalkmeyer, 71 S. W. 539; Heman v. Gilham, 71 S. W. 163; Hill v. Hutchison, 73 S. W. 318; Sparks v  Villa Rosa, 74 S. W. 120.   And the cases just cited hold that the question as to whether the contractor has completed the improvement within a reasonable time is one of fact to be determined by the attending circumstances.    And this is the general rule.   Lapsley v. Howard, 119 Mo. 489; State v. Harrison, 53 Mo. App. 346.   If the defendant therefore completed the improvement in a reasonable time under the attending circumstances the taxbills are valid: otherwise, not.

The city was under an implied duty to furnish the defendant a graded street on which to lay the asphaltum pavement ordered by the special ordinance (Ash v. Independence, 79 Mo. App. l. c. 74), and this duty it recognized and undertook to discharge by passing the ordinance of January 26, 1901, and letting a contract thereunder on March 18, 1901, providing for the grading of the street.   The defendant immediately after the confirmation of the paving contract procured and had on hand and was ready and prepared with the necessary materials, tools and equipment to proceed with the execution of the contract, but was ordered by the city engineer not to proceed until the grading contractor had executed his contract, which like that ordering the paving of the street required the work to be completed within a reasonable time.   The grading was carried on under

the superintendence of the city engineer (General Ordinances of City of St. Joseph, section 6319). The street was in many places as much as five feet above the established grade. The grading contractor was unable to or at least did not complete the work until the latter part of July following the date of the passage of the ordinance ordering the same. The defendant was hindered from proceeding with the execution of its paving contract by the delay in the completion of the grading. It begun the performance of the work as soon as a part of the grading had been done and followed it up as it progressed so closely that within two days after the completion thereof it—the defendant—completed the laying down of the entire concrete base. The paving of the street when complete was accepted by the city engineer. The defendant proceeded in the performance of the work required by the ordinance and contract with the utmost diligence. It is not pretended that the delay in the completion of the work resulted from any fault or negligence on its part. It is undoubtedly true that whatever of delay there was in the prosecution of the work was caused by the failure of the city to have the street graded. Under these circumstances how could any court say that the contract was not completed within a reasonable time? The city engineer must have so regarded it, or else he would not have accepted the work as having been performed according to the requirements of the ordinance and the contract and issued the taxbills to defendant therefor.

Where the ordinance ordering improvements prescribes a definite time for completion of the work, failure of the city to furnish a graded street within that time will not prolong the life of the contract or excuse performance. Rose v. Trestrail, 62 Mo. App. l. c. 358, and the other cases cited in plaintiff's brief. But where the improvement is required by the ordinance not to be completed in a definite time but in a reasonable time, then the action of the city in failing to grade or cause

to be graded the street ordered to be paved and in consequence of which the completion of the paving is retarded necessarily becomes a circumstance, and often times a dominating circumstance, to be considered in determining the question of fact as to whether the work has been completed in a reasonable time. I have been unable to see how any conclusion can be reached in this case other than that the improvement was completed in a reasonable time, regard being had to the attending circumstances to which I have already alluded.

The facts shown in this case are not such as are calculated to impress my mind with the conviction that the plaintiff is justly entitled to the equitable relief which she seeks. The improvement was one that her agent, the city, was duly authorized by its charter to have made and it was completed by defendant according to the special ordinances and the contract and was accepted by the city. And for aught that appears she stood by and saw the defendant expend its material, labor and money in making the same, without protest or objection; but when it was completed, when she had received all the benefits which could result to her lots from so substantial an improvement, she then for the first time objected and invoked the interposition of a court of equity to relieve her property from being burdened with its proportion of the cost of such improvement. It does not appear that the delay in the completion of the improvement was unreasonable or that the plaintiff suffered any injury in consequence of it, and I think she has not shown herself entitled to equitable relief.

The questions which I have considered and ruled adversely to the plaintiff's contentions in the foregoing opinion are decisive of the case and therefore it becomes unnecessary to notice the subordinate questions raised by the appeal.

It is my conclusion that the decree of the circuit court should be reversed. All concur.