GEORGE T. MENEFEE, Respondent, v. AMELIA TAUBMAN, E. M. TAUBMAN, FANNIE BASKETT, R. M. TAUBMAN and DAISY LYNN, Appellants.

Kansas City Court of Appeals, June 28, 1911

1. MUNICIPAL CORPORATIONS: Public Officers: Taxbills. The city of Lexington, until April, 1903, existed under a special charter. W. C. Duncan was elected its city engineer. In April, 1903, it reorganized and was incorporated as a city of the third class. The elective offices of cities of the third class do not include the office of city engineer, but the statute permits the passage of an ordinance creating such an office, and the appointment of an incumbent to fill that position. The city attempted to create such an office, and J. A. Wilson was appointed to fill it. In an action on special taxbills issued by the city of Lexington, defendants claimed that the bills were invalid because their validity depended in part on the acts of Duncan and Wilson, performed after the reorganization of the city, and that neither had any authority to act. The taxbills were held to be valid.

2. ——: ——: ——. The reorganization and reincorporation of the city did not have the effect of abolishing the office of city engineer, and until his successor was appointed Duncan lawfully exercised the functions of that office as a *de jure* officer.

3. ——: ——: ——: Statutes. While the statutes governing cities of the third class do not make the office of city engineer elective, the statutes relative to public improvements clearly express the idea that such an officer is contemplated as a necessary part of the governmental machinery of such cities. The statutes authorizing the change of a city from one class to another should be construed so as to make such a change easy and convenient, and not so as to plunge such city into chaos, or cripple it, by having its laws repealed and its offices abolished, unless the new laws and offices are inconsistent with the old.

4. ——: ——: ——. The adoption by a municipality of the provisions of a general law does not affect the provisions of a former special charter not inconsistent with or repugnant to the provisions of the general law.

5. ——: ——: ——. Where statutes providing for reorganization of a city do not specifically provide for certain officers, the

officers of the old corporation hold their offices and exercise their powers until the officers of the succeeding corporations are elected and qualified.

6. ———: ———: ———: **De Facto Officers.** Even if the ordinance creating the position of city engineer was invalid, this did not prevent Wilson from being a *de facto* officer. While an abortive attempt to create the position of city engineer as an appointive office would not abolish the existing office, and while the mayor and council had no legal authority to appoint Duncan's successor, yet Wilson's induction into office and his general recognition by the public made him city engineer *de facto*, and made valid his acts as such.

7. ———: ———: ———: ———. Where the duties of an office are exercised under color of a known appointment, void because there was a want of power in the appointive body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public, the incumbent of the office is a *de facto* officer.

8. ———: **Taxbills: Public Policy.** Where a public contractor has performed his contract in strict compliance with the law, and no right of the public or property owners has been violated, it would be a judicial outrage to deprive him of his compensation because of a mere technical objection based on the claimed illegality of the appointment of the city engineer.

9. ———: ———: **Delegation of Duties by Engineer to Assistant.** Where the estimate, plans and specifications for a public improvement are prepared by an assistant to the city engineer, and are supervised by the city engineer, the proceedings are not invalid because the city engineer did not do all the work himself.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*Chiles & Chiles, Clarence Vivion* and *J. D. Shewalter*, for appellant.

*Aull & Aull* for respondent.

JOHNSON, J.—This is an action on special tax. bills issued July 28, 1904, by the city of Lexington, a city of the third class, in payment of the cost of grad-

ing and paving one of the public streets. Plaintiff prevailed in the circuit court and the cause is here on the appeal of defendants from a judgment sustaining the taxbills. The ordinance authorizing the improvement was enacted November 9, 1903. Lexington had been operating as a municipal corporation under a special charter and one of its officers was a city engineer and ex-officio street commissioner. At the regular election in June, 1902, William C. Duncan was elected city engineer for a term of two years and discharged the duties of the office until June, 1904, when he was succeeded by Joseph A. Wilson. The preliminary estimate, plans and specifications were prepared in the office of the city engineer and signed by Duncan as the lawful incumbent of that office and the improvement was made under the supervision of Duncan as such officer. After the completion of the work and before the assessment was made, Duncan was succeeded by Wilson who performed the duties of the office preliminary to the assessment and signed the taxbills as city engineer.

It is conceded that the improvement was completed in compliance with the requirements of the ordinance, contract, plans and specifications. In April, 1903, the city reorganized and was incorporated as a city of the third class. All the officers elected in 1902 under the special charter held over and continued to discharge the duties of their respective offices until the election or appointment and qualification of their successors without question from any source and with general public recognition of their right so to hold over. The first election of officers after the reorganization was in April, 1904. The elective officers of cities of the third class do not include the office of city engineer (R. S. 1909, sec. 9147) and no successor to Duncan was elected. But the statutes provide (sec. 9157) that "the mayor with the consent and approval of a majority of the members elected to the

city council shall have power to appoint a street commissioner and such other officers as he may be authorized by ordinance to appoint." Pursuant to this statute an ordinance was enacted June 23, 1904, entitled "An ordinance appointing a city engineer of the city of Lexington and fixing his compensation," and Wilson succeeded Duncan by appointment under this ordinance.

The validity of the taxbills is assailed by defendants on the ground that since the office of city engineer is not made a charter office by the laws relating to cities of the third class, one effect of the reorganization of the city of Lexington was the immediate extinction of the office to which Duncan was elected and 'was holding and that, thereafter, his acts as engineer were void and could not be validated by public recognition and acquiescence. The argument of counsel for defendants may be reduced to the proposition that Duncan could not be a *de jure* officer after his office became non-existent and that he could not be regarded as a *de facto* officer for the reason that there can be no such thing as a *de facto* officer where there is no legal office for him to fill. Our conclusion is that the reorganization and reincorporation of the city did not have the effect of abolishing the office of city engineer and that until his successor was appointed, Duncan lawfully exercised the functions of that office as a *de jure* officer.

While the statutes governing cities of the third class do not make the office elective they do give such municipalities power and authority to make it an appointive office and the statutes relating to public improvements clearly express the legislative idea that the power thus conferred generally will be exercised and that an engineer will be appointed as a necessary part of the governmental machinery of such cities. To say the least, the office is not inconsistent with

the statutory plan and scheme for the government of cities of the third class and we think it was not the purpose of the legislature to make it difficult or even inconvenient for a city to change from one class to another. No statute should be construed in such a manner as to be inconvenient or against reason. [Fanny v. State, 6 Mo. 122; Hilgert v. Barber Co., 107 Mo. App. 393.]

In the statutes applicable to cities of the third class (sec. 9144) we find the provision "The jurisdiction of any city which shall organize under the provisions of this article shall not in any wise be affected or changed in consequence thereof . . . and all laws or parts of laws or ordinances, not inconsistent with this article, which were in operation in such city prior to its organization under this article, or prior to the passage of this article shall continue in force until repealed."

We regard this statute as expressive of the intent of the legislature that a city changing to the third class from another class shall not be plunged into chaos or even crippled by having its laws *ipso facto* repealed or its offices abolished. As long as the existing laws and offices are not inconsistent with those provided for or contemplated in the statutes pertaining to cities of the third class, the orderly and sensible administration of public affairs demand that they be continued until they are repealed and superseded in the usual course of such matters. "The adoption by a municipality of the provisions of a general law does not affect the provisions of a former special charter not inconsistent with or repugnant to the provisions of the general law." [Cyc. vol. 28, p. 244.]

"The statutes providing for reorganization usually contain specific provisions for officers; but lacking such provisions the courts hold that the officers of the old corporation hold their offices and exercise their powers until the officers of the succeeding corpora-

tion are elected and qualified." [Cyc. vol. 28, p. 249; People v. Bagley, 24 Pac. 716 (Cal.); Central v. Sears, 2 Colo. 588; Campbell v. Braden, 31 Kan. 754, 3 Pac. 542; Ritchie v. City, 38 Kan. 371, 16 Pac. 332; Moser v. Shamleffer, 39 Kan. 635, 18 Pac. 956; Trustees v. City of Erie, 31 Pa. St. 515; City of Grand Rapids v. Hydraulic Co., 33 N. W. 749; Lafferty v. Huffman, 99 Ky. 80; Pittsburgh's Petition, 138 Pa. St. 508, 21 Atl. 757; Ayars' Appeal, 122 Pa. St. 266, 16 Atl. 356; State v. Wilson, 12 Lea (Tenn.) 246.]

We approve this rule and applying it hold that since the continuation of the office of city engineer was not inconsistent with the laws relating to cities of the third class, the omission of that office from the statute prescribing the elective offices of such cities did not have the effect of depriving Duncan of the right to hold over as one of the de jure officers of the city.

It is argued as a ground for attacking the tax-bills that the ordinance under which Wilson was appointed to succeed Duncan was invalid for certain reasons specified in the briefs and argument of counsel, but we find this point likewise must be ruled against the contention of defendants. We may concede for argument that the ordinance is subject to the objections urged against it but this concession does not call imperatively for the conclusion that Wilson was a mere intruder. The abortive attempt to establish the office of city engineer as an appointive office did not have the effect of abolishing the existing office and while the mayor and council, in the absence of a valid ordinance, had no authority to appoint Duncan's successor the induction of their appointee into the office and the general public recognition of him as the lawful incumbent of a legal office, constituted him city engineer de facto, and gave validity to his acts as such officer. [Usher v. Telegraph Company, 122 Mo. App. 98.] In that case we quoted

with approval the following excerpt from the opinion in State v. Carroll, 38 Conn. 449:

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised (1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (2) under color of known and valid appointment or election, but where the officer failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public; (4) under color of an election or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be such."

The third of these rules applies to the present case and affords sufficient support for our conclusion that Wilson, at least, must be recognized as a *de facto* officer. And we shall add that we do not look with favor on the contention of defendants that would deprive of his just compensation the contractor who performed his contract in strict compliance with all of the requirements of the law necessary to give it validity. No rights of the public or of property owners were violated or impaired in any way, and to allow the contractor, without any fault on his part, to be deprived of his reward on a mere technical objection that the engineer in office when the assessment was levied was not legally appointed, would be nothing short of a judicial outrage.

Finally defendants contend that the estimate, plans and specifications were not prepared by Duncan, the engineer, but by an assistant employed specially by him or by the city. The rule we applied in Paving Co. v. O'Brien, 128 Mo. App. 267, is invoked. We held that a city engineer had no authority to delegate such work to a private person but must bestow upon it his own care and skill, but we did not hold that he could not avail himself of the services and skill of his assistants. On the contrary, we expressed the opinion that "such work might have been performed legally by assistants in his office under his supervision." The evidence discloses that Duncan was not well qualified to perform the work in question and that he relied almost altogether on the skill and judgment of his assistant who was expert in such matters. But, further it appears that Duncan gave to the task the full measure of his skill, such as it was, and that to the best of his ability, he supervised the work of his assistant. This was all he could do and all the law as interpreted in the O'Brien case required of him.

We find no error in the judgment and it is affirmed. All concur.