CASE v. LIQUOR CONTROL COMMISSION.

1. INTOXICATING LIQUORS—REVOCATION OF LICENSE—EVIDENCE—HEARSAY.

On certiorari to circuit court from order of State liquor control commission revoking a license to sell at retail beer, wine and spirits for consumption on the premises on a complaint charging questionable ownership, trial court properly denied relief where there was sufficient competent testimony taken at hearing before commission to justify its action notwithstanding considerable testimony of a hearsay nature was also taken (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

2. CONSTITUTIONAL LAW—PRESUMPTIONS—STATUTES.

Since every reasonable presumption and intendment must be resolved in favor of the constitutionality of an act, it must appear so clearly as to have no room for any reasonable doubt that it violates the Constitution before being held invalid.

3. SAME—DELEGATION OF POWERS—LEGISLATURE—LIQUOR CONTROL COMMISSION—BOARD OF HEARING EXAMINERS.

While none of the control vested in the liquor control commission by the Constitution may be delegated by the legislature, the legislature may create an auxiliary ministerial board of hearing examiners which makes its findings to the commission, the latter having the right to accept or reject such findings and take further testimony and retaining complete power to suspend and revoke licenses (Const. 1908, art. 15, § 11, as amended in 1932; Act No. 8, §§ 5a, 20, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 133, Pub. Acts 1945).

4. STATUTES—TITLE OF ACT—ITEMIZATION OF AGENCIES.

It is not necessary to itemize in the title to an act all of the agencies by which its provisions are to be carried out, especially those which perform merely ministerial or limited duties.

5. Intoxicating Liquors—Liquor Control Commission—Board of Hearing Examiners—Civil Service.

Board of hearing examiners, designated as a board by the legislature, whose three members received $6,000 a year for six-year staggered terms, who were to be appointed by the governor with senate approval and removable from office by the governor, which board was to be an independent body from, but a fact-finding body auxiliary to, the liquor control commission which could accept or reject board's findings and take further testimony was a properly authorized board and not a part of the State civil service (Const. 1908, art. 6, § 22, art. 16, § 11; Act No. 8, § 5a, Pub. Acts 1933 [Ex. Sess.], as added by Act No. 133, Pub. Acts 1945).

6. Officers—Civil Service—Boards or Commissions.

The mere legislative labeling of a body of employees as a board would be insufficient to bring such body within the clause of amendment of the Constitution excluding from the State civil service members of boards or commissions (Const. 1908, art. 6, § 22).

7. Intoxicating Liquors—Liquor Control Commission—Certiorari.

If the liquor control commission acts capriciously, fraudulently, or illegally, certiorari is the remedy of an aggrieved party as provided by the act regulating alcoholic beverage traffic within the State (Act No. 8, § 20, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 133, Pub. Acts 1945).

8. Same—Board of Hearing Examiners—Liquor Control Commission—Suspension and Revocation of Licenses.

Until a board of hearing examiners is appointed to make findings of fact with respect to suspension or revocation of liquor licenses, the liquor control commission retains full power to act in the matter, enactment of provisions authorizing the appointment of such board not operating to suspend action by the commission in such matters (Act No. 8, §§ 5a, 20, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 133, Pub. Acts 1945).

9. Officers—Holding Over After Expiration of Term—Action in De Facto Capacity.

Ordinarily an officer holding over after his term has expired or his authority vacated still is a *de facto* officer, and his acts as such are legal.

10. INTOXICATING LIQUORS—MORAL CHARACTER OF LICENSEES.

Good moral character in licensees is of paramount importance in determining whether or not the privilege of engaging in the liquor business should be continued (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

11. SAME—LICENSES.

No one has an inherent right to a liquor license (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

12. SAME—PRIVILEGE.

The privilege of engaging in the liquor business is granted by the State under proper restrictions and after careful examination (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

13. SAME—REVOCATION OF LICENSE—ESTOPPEL—PREVIOUS ACTS.

The liquor control commission is not estopped to revoke a liquor license of licensee for one year for reasons occurring prior to that year even if known by the commission prior to the issuance of the license (Act No. 8, § 20, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 133, Pub. Acts 1945).

14. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES.

No costs are allowed in proceeding to determine validity of order revoking a liquor license in which principal question as to construction of statute involved a public question (Act No. 8, §§ 5a, 20, Pub. Acts 1933 [Ex. Sess.], as amended by Act No. 133, Pub. Acts 1945).

Appeal from Wayne; Webster (Arthur), J. Submitted April 5, 1946. (Docket No. 55, Calendar No. 43,301.) Decided June 3, 1946. Rehearing denied September 11, 1946.

Certiorari by Gernert E. Case and wife against Michigan Liquor Control Commission and others to set aside order revoking plaintiffs' license. Writ denied. Plaintiffs appeal. Affirmed.

*William G. Comb* and *Alfred A. May,* for plaintiffs.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara, Charles M. A. Martin* and *Ben H. Cole,* Assistants Attorney General, for defendants.

BUTZEL, C. J.   Gernert E. Case and Helen Mary Case, his wife, as plaintiffs, filed a petition for certiorari in the circuit court of the county of Wayne. They represented themselves to be the owners of a class "C" license and the operators under the license of what was referred to by witnesses as Case's Bar at 14188 E. Seven-Mile Road, Detroit, Michigan. They claimed that the license was illegally revoked by the Michigan liquor control commission, which, together with its commissioners, and also the commissioner of the metropolitan police department of the city of Detroit, are made defendants. After hearing, the trial court denied the relief sought in the certiorari proceedings. Plaintiffs appeal.

Plaintiffs contend that the order revoking the license was not based upon substantial, competent evidence, but upon incompetent testimony consisting of hearsay and conclusions. The complaint preceding the hearing for revocation charged questionable ownership of the premises from June to October, 1944. A careful reading of the conflicting testimony brings one to the conclusion that the bar during the period complained of belonged either to one Fred Beal or Joe Moceri, or both of them, or at least they exercised a proprietary control over it. It was offered for sale by Moceri, who also furnished it with extra liquor from another bar, the price being paid to Beal. Gernert Case worked at a war plant, while his wife Helen looked after the bar. For a period of five months one Litzan claimed that he had purchased the bar. He paid for a new refrigeration system, new doors and other improvements for the premises. He received the total receipts from the bar after all bills for supplies, et cetera, had been paid by Helen Case, who also retained $75 a week for her services in running the

bar. Plaintiffs admit that the balance was paid to Litzan, but claim this was only done because they were selling the bar to Litzan, and he took possession while he was trying to secure a transfer of the license. Litzan's negotiations were principally with Moceri, and a check for a large amount of the purchase price was made payable to Beal and Moceri, who cashed it. Litzan testified that when he bought the bar, Beal turned to Helen Case and introduced Litzan as her "new boss." Litzan was refused a new license because of his past record. Thereupon moneys paid were returned to Litzan, but the dealings were largely with Moceri. The Cases seemed to have had very little to do with the transaction, though it is evident that the business was transferred back to them. Charges were made that they were "fronting" for either Beal or Moceri or both of them. There is considerable additional testimony that corroborates this claim, though it is vigorously denied by plaintiffs. Plaintiffs claim that a large part of the testimony was hearsay. While there was some testimony of conversations and acts that took place in the absence of either of plaintiffs, most of such hearsay testimony was properly connected up with competent testimony, so that it became competent. Even if there be any merit to the claim that there was considerable testimony of a hearsay nature, there was sufficient competent testimony to justify the conclusion reached by the liquor commission. We agree with the trial court in denying the relief sought.

Another question raised by plaintiffs is of sufficient importance so as to require a full discussion. They claim that under Act No. 8, § 5a, Pub. Acts 1933 (Ex. Sess.), as added by Act No. 133, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 9209-20a, Stat. Ann. 1945 Cum. Supp. § 18.975[1]), an amend-

ment by way of an addition to the liquor control act, the license could be revoked only after a complaint had been duly filed with the board of examiners and a hearing had before such board. Section 5a is as follows:

"There is hereby created a board of hearing examiners to consist of 3 members to be appointed by the governor, by and with the advice and consent of the senate, for terms of 6 years each: Provided, That of the members first appointed 1 shall be appointed for a term of 2 years, 1 for a term of 4 years and 1 for a term of 6 years. Any vacancy shall be filled by the governor for the unexpired term in the same manner. Members of the board may be removed by the governor for misfeasance, malfeasance and nonfeasance in office. Members of the board shall receive an annual compensation of $6,000 and shall be entitled to actual and necessary expenses incurred in the performance of duties, to be paid in the same manner as salaries and expenses of other State officers are paid. Such board of hearing examiners or any member thereof shall conduct hearings on questions referred to the board by the commission, under such rules and regulations as the commission may establish. *The examiners shall report their findings to the commission for decision.* Each member of the board is authorized to examine witnesses and administer oaths. The attorney general shall assign 3 of his assistants to the commission. *In all instances when a license is to be either suspended or revoked the commission shall cause a complaint to be filed with said board whereupon said board shall conduct a hearing limited to the facts and law and rules and regulations of the liquor control commission as specified in said complaint. In the conducting of hearings no hearsay testimony shall be admissible and the licensees named in the complaint shall have the right to have all witnesses testify in person at the hear-*

*ing.* *The findings of the board shall be based upon the facts and the law and the rules and regulations of the liquor control commission.* A statement of the facts may be requested by either the commission or the licensee. The complaint filed with the board shall specify the date of the alleged offense, the names of the witnesses, and any other facts that may be in issue at the hearing.''

We have italicized the particular provision of the amendment for the purposes of discussion. The attorney general claims that the entire section in so far as it refers to the board of examiners is unconstitutional. Probably on account of such claim the governor has not yet made any appointments to the board of examiners and consequently there has been no board to which to refer complaints. It is very probable that had such board been appointed and hearings had before it, a similar claim of unconstitutionality would have been made, and it would be claimed that revocations based on such hearings would be null and void. We are confronted with a large number of appeals in which the question of the constitutionality of this section has arisen, and, inasmuch as it is before us in the instant case and it has been well briefed, we shall pass upon it.

If there is any invalidity in section 5a, *supra,* it must appear so clearly as to leave no room for any reasonable doubt that it violates the Constitution, for every reasonable presumption and intendment must be resolved in favor of the constitutionality of the act. *Cady* v. *City of Detroit,* 289 Mich. 499; *In re Brewster Street Housing Site,* 291 Mich. 313. The attorney general claims that inasmuch as article 16, § 11, of the 1908 Constitution * provides that the legislature may by law establish a liquor

* As amended in November, 1932.—REPORTER.

control commission, who, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this State, the legislature may not delegate any part of the control to a board of hearing examiners. This would be true if such board had the power to suspend or revoke a license. It will be found upon examination of section 5a, *supra,* that such board is merely a fact-finding board which makes its findings to the commission which, however, has and retains complete power to suspend and revoke the licenses. The commission has the right to accept or refuse to accept the findings of the board. The commission may take further testimony if it sees fit, and either the commission or a commissioner may suspend or revoke the licenses. Act No. 8, § 20, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 133, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 9209–35, Stat. Ann. 1945 Cum. Supp. § 18.991), reads as follows:

"SEC. 20.   *   *   *   The commission shall have the right and power to suspend or revoke and any commissioner designated by the chairman shall, upon due notice and proper hearing, have the right and power to suspend or revoke any license upon a violation of any of the provisions of this act or any of the rules and regulations adopted by the commission hereunder: Provided, however, That the commission, or any member of the commission designated by the chairman may assess a penalty of not more than $300 for each violation, in addition to or in lieu of revocation or suspension of the license, which penalty shall be paid to the commission and deposited with the State treasurer and is hereby appropriated to the commission to be expended in carrying out the provisions of this act.

"The commission shall provide the procedure by which any licensee feeling aggrieved by any such

suspension or revocation and/or penalty ordered by the commission or a commissioner may request a hearing for the purpose of laying any facts or reasons before said commission why said suspension or revocation and/or penalty should be modified or rescinded. The commission after reviewing the record made before the commissioner or examiner may allow or refuse to allow the hearing in accordance with the commission's rules and regulations. Such right, however, shall not be interpreted by any court as curtailing, removing or annulling the right in said commission to so suspend or revoke licenses as hereby given it. A licensee shall have no right of appeal from the final determination of the commission, except by writ of certiorari to the proper court. Notice of the order of suspension or revocation of a license and/or assessment of a penalty shall be given in the manner prescribed by the commission. The suspension or revocation of a license and/or assessment of a penalty by the commission shall not prohibit the institution of criminal prosecutions for the violations of the provisions of this act. The institution of criminal prosecutions for such violations, or the acquittal or conviction of any person thereunder, shall not prevent the suspension or revocation of licenses and/or assessment of a penalty by the commission."

There may be some evil in having the liquor commission make the complaint and then take testimony and make the final decision. The legislature wanted a board of hearing examiners to first take the testimony and make findings for the benefit of the commission, but specified that the commission should have the final word and thus left the complete control in the commission. The hearing before the board was merely ministerial, and it was not necessary to amend the title of the act to provide for the board, inasmuch as it has but limited duties

as hereinbefore stated. · It is not necessary in the title to an act to itemize all of the agencies by which its provisions are to be carried out.

It is, however, claimed that even if we come to the conclusion hereinbefore expressed, the act violates the civil service amendment to the State Constitution.  The act provides that members of the board shall be appointed by the governor and shall be removed by him for misfeasance, malfeasance and nonfeasance in office.  The salary is fixed at $6,000.  The members of the board shall be first appointed, one for a term of two years, one for four years, and one for six years, and thereafter each for a term of six years, any vacancy to be filled by the governor.  The civil service amendment to the Constitution of 1908, art. 6, § 22,* expressly excludes from the State civil service members of boards or commissions.  The legislature by section 5a, *supra,* created a board of importance and in language that showed that the appointment of mere employees was not contemplated, but an additional auxiliary body to assist the commission.  The mere labeling of a body of employees as a board would be insufficient, but that was not the legislative intent as seen by the wording of the act.  It was to be a real board of hearing referees which was to be independent of the commission, but its findings would not bind the commission.  We believe that the creation of a body of such importance and dignity, and characterized by the legislature as a board, as a matter of fact created a board which is expressly excepted by the civil service amendment.  Cases to the contrary cited by the attorney general bear some analogy but refer to employees and not to a board of this character.  We find that the board was properly authorized, and that they

---

* Adopted November, 1940.—Reporter.

have the constitutional power to act as an auxiliary, a fact-finding body; that hearings must be had before the board when created, but the final decision rests with the commission. If the commission acts capriciously, fraudulently or illegally, certiorari is the remedy as provided by the act.

We further hold that until the board is appointed, the commission retains its full power to act, and that the revocation was proper. We are not in accord with the claim that the license could not be revoked without a board when there was no such board in existence. The action by the commission is not suspended until after a board is created. Diligent search on the part of the attorney general, as well as ourselves, has resulted in the finding of but little authority on the subject. Possibly it is due to the fact that a person naturally would not assume that the law would be suspended pending the appointment of some newly-established board unless the act itself so provided. Looking at the case realistically, it would mean that during the period of over a year since section 5a, *supra,* became effective, there could be no license revoked irrespective of the conduct of the licensees. We have found much authority to the effect that officers holding over after their term has expired or their authority vacated still are *de facto* officers, and their acts as such are legal. The decisions are uniform in permitting old boards to continue acting until actually displaced. 43 C. J. pp. 169, 170; *Menefee* v. *Taubman,* 159 Mo. App. 318 (140 S. W. 604); *Hilgert* v. *Barber Asphalt Paving Co.,* 107 Mo. App. 385 (81 S. W. 496). In the case of *Plaugher* v. *American Viscose Corp.,* 147 Pa. Sup. 372, 381 (24 Atl. [2d] 698), a case very similar to the instant one, the court held:

"Until there is a medical board functioning under the act, this proviso or exception is in abeyance

and the workmen's compensation board can proceed as if there was no such provision in the act, and make its findings of fact with the same force and effect as if the provision cited from section 423 did not exist. The general authority conferred by the act is not affected by the qualifying provision respecting a nonexistent board."

We hold that the action of the commission prior to the appointment of the board is legal and proper.

Appellants further contend that inasmuch as a showing was made of a violation occurring in 1944, the Michigan liquor control commission did not have the power to revoke a license issued May 1, 1945, for the ensuing year. Good moral character in licensees is of paramount importance in determining whether the privilege of engaging in the liquor business should be continued. No one has an inherent right to a license. It is a privilege granted by the State under proper restrictions and after careful examination. We held in *Powers* v. *Secretary of State*, 312 Mich. 315, as follows (quoting from syllabus):

"The secretary of State is not estopped to deny license to applicant automobile dealer for one year for reasons occurring prior to that year even if known by the secretary of State previous to issuance of former license."

In substance the relief sought was that the order of the Michigan liquor control commission revoking plaintiff's license "be declared void and of no effect; and that the license be restored to your petitioners," and that defendants "be further restrained from in any way interfering with or molesting your petitioners in the lawful operation of said business." We hold that the order of the trial judge denying the relief sought was proper.

The order is affirmed, but without costs, as a public question is involved.

CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.