PEOPLE *v.* SCHAFRAN.

1. INTOXICATING LIQUORS—LICENSE—STATUTORY CONSTRUCTION.

   The Warner-Cramton law (Act No. 291, Pub. Acts 1909), introduced into the liquor laws a new element establishing other requirements than the mere payment of a tax as a prerequisite to engaging in the business, and is therefore subject to the rules pertaining to a license law, as distinguished from a tax law.

2. SAME—VESTED INTEREST—POLICE POWER.

   Since it is not within the power of the legislature to make an irrepealable contract as to matters that affect the public health or morals so as to limit the exercise of the police power, the licensee has no vested property right in his license, which may be granted on such conditions as the State sees proper to impose.

3. SAME—CONSTITUTIONAL LAW—FORFEITURE OF LICENSE.

   It was within the constitutional power of the legislature to provide that a retail liquor dealer's license should be forfeited if he should be twice convicted of violating the provisions of the liquor law; and the condition is not so unreasonable or oppressive as to be invalid.[1]

4. SAME—REVOCATION.

   The effect of two convictions is to forfeit the right of the licensee without further proceedings to revoke his rights.

5. SAME.

   The license is a mere privilege granted under the police power to carry on the business subject to the will of the grantor, and is not a contract or property interest protected by the Constitution.

6. SAME—REPAYMENT—STATUTES.

   No repayment of the license fee or any part thereof is contemplated by the statute as a limitation precedent to prosecution for selling without a license.

7. SAME.

   Nor, in the absence of statutory provision therefor, is the liquor dealer entitled to a rebate for the unexpired term.

[1] Constitutionality of statute by which conviction of violation of liquor law entails revocation of license and prohibition of sale of liquor, see note in 30 L. R. A. (N. S.) 1004.

Exceptions before sentence from the recorder's court of the city of Detroit; Connolly, J. Submitted November 17, 1911. (Docket No. 194.) Decided January 23, 1912.

Frank Schafran was convicted of engaging in the business of selling intoxicating liquors without a license. Affirmed.

*Edward Minock, Daniel Minock,* and *Thomas Mulvihill,* for appellant.

*Franz C. Kuhn,* Attorney General, *Hugh Shepard,* Prosecuting Attorney, and *Fred H. Aldrich,* Assistant Prosecuting Attorney, for the people.

Stone, J. The respondent was convicted in the recorder's court of the city of Detroit of having engaged in the business of selling and keeping for sale distilled, brewed, fermented, malt, mixed, spirituous, and intoxicating liquors on January 26, 1911, at No. 1,043 Russell street, in the city of Detroit, he not having had a valid license to engage in such business, as provided by Act No. 291, Pub. Acts 1909, commonly known as the " Warner-Cramton Law." It was also averred in the information that the license theretofore issued to respondent under said act had been revoked by reason of his violations of said act; that said respondent had been theretofore convicted in said recorder's court, which is a court of record, on January 26, 1910, and again on May 10, 1910, of violations of the provisions of said act; and that by reason thereof his license became forfeited and null and void, and that he was precluded and debarred from continuing in the retail liquor business. Yet it was averred that respondent had continued to conduct said business, he not then and there being a druggist, etc. Under respondent's plea of not guilty, the case was tried before a jury.

It was conceded on the trial of the case that the respondent had paid on May 1, 1910, $500 to the county

treasurer, the amount required by said act, and had received a license in the usual form to carry on the retail liquor business, that his license was duly displayed in his place of business, and that he had the right under said license to continue in the business, unless that right was forfeited by his said two convictions on the charges of not closing his saloon on certain Sundays, in violation of said act. The facts are not in dispute. The people gave evidence tending to support the allegations of the information, and the respondent was convicted. The case has been brought here by respondent before sentence. It is the contention of respondent that so much of Act No. 291, Pub. Acts 1909, as forfeits the license of respondent, and debars him from continuing in the retail liquor business after having been twice convicted in a court of record of violations of said act, is unconstitutional and void; and he further contends that convictions of violations of the provisions of the act do not *per se* cause a forfeiture of his license.

Counsel for respondent requested the court, in writing, to instruct the jury to render a verdict of not guilty for the following reasons:

(1) Because no mode of procedure is provided by the Warner-Cramton liquor law, so called, for the forfeiture of the liquor license.

(2) That the forfeiture clause contained in said act is so oppressive and unreasonable that in this particular the act is void.

(3) That, inasmuch as the act does not provide for the taking of any legal procedure to declare a forfeiture of the license, no proceedings can be taken for that purpose. The act is in derogation of the common law, and, being a criminal statute, must be strictly construed. The attempt here made to declare the respondent's license forfeited is an assumption of power not authorized by the act.

(4) There can be no forfeiture of property unless the forfeiture is judicially determined, and the power so to determine must be provided by the act creating the forfeiture, and the court cannot assume power not granted by the act.

(5) There being no proof in the case of the tender or repayment to the respondent of the license fee paid by him to the county treasurer before the commencement of this suit, no proceedings are authorized to be taken for the forfeiture of respondent's license under this act, and the verdict of the jury should be not guilty.

Error is assigned upon the refusal of these requests.

It will be well for us at the outset to refer to certain provisions of the act in question. In section 4 of the act it is provided as follows:

"Every person intending to engage in any business named in section one of this act, and requiring the payment of any license fee mentioned in said section one shall, on or before the first day of May in each year, make and file with the clerk of the township, village or city in which it is proposed to carry on such business, an application for a license in writing and on oath, showing the name and residence of such person, the ward, village or township in which it is proposed to carry on such sale or manufacture, and the nature of the business which such person is intending to engage in, and stating whether or not such person is a citizen of the United States and the State of Michigan and whether such person has, since the taking effect of this act, been convicted of any violation of the liquor laws of this State or any other State, or of any other laws of this State, and the time, place and number of such convictions, and containing an agreement that in the event of the issuance of a license to such applicant upon such application, such license shall be revocable as provided in this act.  *  *  *  Said board shall not approve the application of any woman, nor of any one who is not a citizen of the State of Michigan and of the United States, nor of any person who has served time in any State prison or penitentiary of this or any other State, nor of any person who has subsequent to taking effect of this act, been twice convicted by a court of competent jurisdiction of any violation of the liquor laws of this State or any other State. Subject to the provisions of this act said board or council shall approve applications for licenses."

Section 36 provides as follows:

" No license shall be issued to any one to engage in the retail liquor business in this State who has been convicted

two times in a court of record of a violation of the liquor laws of the State of Michigan or any other State after this act takes effect, nor to any one who is not a citizen of the United States of America and State of Michigan, and any license obtained by any such person shall be of no force or effect and no protection to the person who undertakes to engage in said business, and he will forfeit the amount paid to obtain said license. Every license issued under the provisions of this act shall be upon the express condition that in event of the licensee being convicted two times in a court of record of violating the provisions of this act after this amendment takes effect, such license shall be revoked, forfeited and become null and void, and the licensee shall be forthwith precluded and debarred from continuing in the retail liquor business."

Section 7 of said act contains the following language:

"Any person or persons engaged in any business requiring the payment of a license fee under section one of this act, who, after paying the license fee so required, shall be a second time convicted of a violation of any of the provisions of this act, shall thereby forfeit entirely the privilege and rights conferred upon such person or persons by the license issued to such person or persons upon payment of the license fee herein required, and during the remainder of the period covered by such license such person or persons shall not carry on the business specified in said license at the place specified in said license."

1. In the recent case of *Fuchs* v. *Grass Lake Common Council*, 166 Mich. 569 (132 N. W. 96), we had occasion to discuss somewhat the power of the State to control and regulate the traffic in intoxicating liquors as a proper exercise of the police power, and we there cited authorities in support of the constitutionality of such legislation. We do not deem it necessary to repeat those citations. *Boston Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Jordan* v. *City of Evansville*, 163 Ind. 512 (72 N. E. 544, 67 L. R. A. 613), and note in 2 Am. & Eng. Ann. Cas. 96. In *Robison* v. *Haug*, 71 Mich. 38 (38 N. W. 668), Mr. Justice Long, in discussing this question, said:

"The business of selling intoxicating liquors is one which the legislature has an undoubted right to regulate

or prohibit, and it has therefore the power to impose such conditions and restrictions upon the sale as in its judgment may seem wise, where such restrictions are applied to all alike, or to the same class alike. It is within the power of the legislative branch of the State government, and is a part of the police regulations, such as the State may make in respect to the sale of intoxicating liquors for the prevention of intemperance, pauperism, and crime. It is not for the courts to determine its expediency, or, as said by Mr. Cooley in his work on Constitutional Limitations, 'to run a race of right, reason and expediency with the legislative branch of the State government.' If the legislature may altogether prohibit the liquor traffic, it may make such conditions if it is permitted to be continued, and place its sale under such restrictions as will make it easy to detect any violations of the law. * * * The business of selling intoxicating liquors has for many years, both in this country and in England, been regarded by legislatures and courts with disfavor; and it does not stand upon the same plane of utility and morality with many useful arts, trades, and professions."

In *Sherlock* v. *Stuart*, 96 Mich. 193 (55 N. W. 845, 21 L. R. A. 580), Mr. Justice GRANT said:

"The principle upon which is based the regulation of the liquor traffic is found in the police power of the State. No one possesses a natural, inalienable, or constitutional right to keep a saloon for the sale of intoxicating liquors. 'To sell intoxicating liquor at retail is not a natural right to pursue an ordinary calling.' Black on Intoxicating Liquors, §§ 46, 48. * * * 'If the governing power can prohibit a thing altogether, it can impose such conditions upon its existence as it pleases.' *Ex parte Christensen*, 85 Cal. 208 [24 Pac. 747]; *Crowley* v. *Christensen*, 137 U. S. 86 [11 Sup. Ct. 13].

"The system in this State is not purely a tax system. The fee to be paid as a condition precedent to entering upon the business is called a 'tax,' but there are other conditions precedent which are inconsistent with a purely tax system. These provisions partake of the character of a license. It is said by Black:

" 'Any law which requires certain acts, other than the mere payment of a tax, to be done by the party, as a prerequisite to his right to enter upon the pursuit of the trade in question, and makes it a

penal offense to engage in the business without such formalities, is in reality a license law, no matter whether it be called a "tax" or by any other name.' Black on Intoxicating Liquors, § 108."

Counsel for respondent rely largely upon the case of *Robison* v. *Miner and Haug*, 68 Mich. 549 (37 N. W. 21). That decision dealt with the liquor law of 1887. That was a tax law, taxing the traffic. We think that the Warner-Cramton act introduced into the liquor laws of this State a new element, rendering applicable the rules pertaining to a license law. The law of 1909, instead of providing for a mere application to carry on the business, requires an application under oath, in which the applicant makes certain representations and agreements, among them one that, in the event of the issuance of a license to such applicant upon such application, such license shall be revokable as provided in the act. This is followed by a license which differs very materially from the tax receipt given under the law of 1887, in that it is upon the express condition that, in the event of the licensee being convicted two times in a court of record of violating the provisions of the act, such license shall be revoked, forfeited, and become null and void, and the licensee shall be forthwith precluded and debarred from continuing in the retail liquor business.

The licensee has no vested property right in his license; in fact, it would not be in the power of the legislature to make an irrepealable contract as to that which affects public morals or public health so as to limit the exercise of the police power over the subject-matter. The license is granted to the licensee upon the condition that he shall not violate the provisions of the statute. The legislature having control of the subject of the traffic in, and use of, intoxicating liquors, may make such regulations to prevent public evils and prevent injuries resulting from intoxication as in its judgment are calculated to accomplish this end. It may prohibit the selling or giving away of liquors, or it may, while not interfering with the liberty of the sale or use, guard against the dangers of an indis-

criminate traffic, and induce caution on the part of those who engage in the business by subjecting them to liabilities for consequential injuries. *Bertholf* v. *O'Reilly*, 74 N. Y. 509 (30 Am. Rep. 323); *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657. Again, in the absence of a provision in the Constitution of a State restricting the power of the legislature in reference to the sale of liquor, the legislature has the power to regulate the mode, manner, and the circumstances under which the liquor traffic may be conducted, and to surround the right to pursue it with such conditions, restrictions, and limitations as it may deem proper. *Giozza* v. *Tiernan*, 148 U. S. 657 (13 Sup. Ct. 721); *Gundling* v. *City of Chicago*, 177 U. S. 183 (20 Sup. Ct. 633); Joyce on Intoxicating Liquors, § 80 *et seq.* It is entirely within the province of the legislature, in the exercise of the police power of the State, to regulate the sale of intoxicating liquors, and to impose such restrictions upon those engaged in the business as will carry out its purpose. *State* v. *Settles*, 34 Mont. 448 (87 Pac. 445); *State* v. *Ludington*, 33 Wis. 107.

It was undoubtedly one of the objects of the Warner-Cramton law to improve the personnel of the business. This is rendered obvious by the provisions of the act which we have quoted. Inasmuch as a license is in the nature of a permit, creates no vested or property rights, and the traffic is at all times subject to the control of the State in the exercise of the police power, it follows that the State may at any time revoke licenses whenever it deems it for the public welfare. Joyce on Intoxicating Liquors, § 303, and cases cited. Revocation of a license is not so much for punishment within the meaning of the Constitution, as it is to prohibit an improper person from continuing in the business, because of violations of the law. Joyce on Intoxicating Liquors, § 303; *State* v. *O'Connor*, 58 Minn. 193 (59 N. W. 999). We have no doubt of the power of the legislature under our Constitution to provide that any number of convictions which it deems wise to provide may

*ipso facto* work a forfeiture of the conditional license granted to a saloon keeper, where both the application and the license have made such a provision. We fail to see any constitutional infirmity in the statute in question, and we think that *Robison* v. *Miner and Haug, supra,* can be distinguished.

2. The second question urged by respondent's counsel is that the forfeiture clause in the act is oppressive and unreasonable, and is therefore void. It seems to us that the vital question is whether the two convictions provided for in the act *ipso facto* work a forfeiture of the license. In our opinion the trial judge was correct in charging the jury that two convictions operate *per se* to forfeit the license. We think that the language of the statute wherein it provides that, if any person engaged in the business shall be a second time convicted of a violation, he shall thereby forfeit entirely the privilege and rights conferred upon him, is very explicit and clear to the effect that the convictions shall operate as a forfeiture. It has been repeatedly held that such a provision in an ordinance or statute is valid. In *Sprayberry* v. *City of Atlanta,* 87 Ga. 120 (13 S. E. 197), the charter of the city was under consideration, in and by which the mayor and general council had full power to pass such ordinances as might to them seem proper for the security, peace, health, order, and good government of the city, and to regulate the retail of ardent spirits within its corporate limits. It was held that they had the power to ordain that the conviction, in a State court, of any person licensed to retail spirituous or malt liquors, for the violation of the State statute in relation to the sale of ardent spirits to a minor or a person already intoxicated, or the conviction of the retailer before the recorder's court for the violation of any of the provisions of the city ordinance regulating the issuance of licenses for retailing, should work an immediate revocation of the license of such person, and that for any further exercise of the privilege granted by such license he should be punished as one retailing without a license. It was

held that the granting of such a license to sell liquor was an exercise of police power; that such license was not a contract, but only a permission to enjoy the privilege on the terms stated for a specified time unless it was sooner abrogated; and that by its revocation the citizen was not deprived of his property without due process of law. The court said:

"But it is claimed that he ought to have been notified by the mayor and council that his license had been revoked; that unless this was done, he must try the case himself and determine for himself whether it had been revoked or not by his conviction. What was the necessity of any notice to him? His license informed him that it was subject to be revoked. The law under which the license was granted informed him that his conviction would work an immediate revocation. What more notice could he desire? What other trial could he wish than the one he had already had in the superior court? When he was convicted there, the notice was ample that it operated as a revocation of his license. Nothing that he could have said or done before the mayor and council would have changed the record of his conviction, they would have had no discretion in the matter; the law was as imperative upon them as it was upon him. Upon the subject of the immediate revocation of a license by a violation of the condition upon which it is issued, the Court of Appeals of New York, in the case of the *People* v. *Meyers*, 95 N. Y. 223, says:

"'Under the provision of the excise act of 1873, which provides that a conviction for a violation of any provision of said act, or of the acts thereby amended, by any person or at any place licensed as therein provided, shall forfeit the license, and authorizes the board of excise upon being satisfied of a violation of any such provision to cancel or revoke the license, a conviction of a bartender of a licensed person for an offense under the act, committed at the place licensed, operates *ipso facto* to annul the license. The act casts upon the licensee the necessity, in order to protect himself in the enjoyment of his license, of seeing to it that no violation shall be committed upon the licensed premises. * * * It is competent for the legislature to prescribe such a cause of forfeiture.'

"In the case of *People* v. *Tighe*, 5 Hun (N. Y.), 25, it was held that the conviction of a licensee under any of

the provisions of the act of 1873 *ipso facto* annuls his license.  Moreover, we think that when Sprayberry applied for and accepted a license under this ordinance, he assented to the condition contained therein, and he has no right now to insist that it shall be adjudged forfeited by a judicial tribunal.  He knew this to be the law when he applied for and accepted the license, and he knew that these terms, conditions, and restrictions were put upon him by his acceptance of it.  He knew that when he was indicted and convicted for a violation of the State law, it worked an immediate revocation of the license."

See *Schwuchow* v. *City of Chicago*, 68 Ill. 444; *Wiggins* v. *City of Chicago*, 68 Ill. 372.

3.  We have already covered the first, second, and third requests to charge, and have said that a license to sell liquor is not a contract, but only a promise to enjoy the privilege on the terms named for a specified time, unless it be sooner revoked.  The granting of a license is an exercise of police power, and does not include any contractual relations whatever.  *Stone* v. *Mississippi*, 101 U. S. 820. A license is a mere privilege to carry on a business subject to the will of the grantor, and it is not property in the sense which protects it under the Constitution.  The revocation of a license does not deprive the citizen of his liberty or his property without due process of law.  See, also, *Cassidy* v. *City of Macon*, 133 Ga. 689 (66 S. E. 941). It must be held that the respondent has had his day in court.  It appears undisputed in the case that he paid the fines in both cases of Sunday violations, and he knew the conditions under which his license was held.  It thereby became forfeited by reason of his own illegal acts.  These conditions were provided for by the license itself, as well as in the application for the license.  They were contained in the statute, which he was bound to know.

4.  We have now discussed all of the questions raised by counsel except that covered by the fifth request to charge. It is contended that it was a condition precedent to the institution of the prosecution that the license fee paid by the respondent should have been tendered back, or repaid

to him, and that the language of section 7, above quoted, must be so construed. We do not so read the statute. While there is a redundancy in the language used, there is in our opinion no provision for repayment of the license fee, or any part thereof. The words, "upon payment of the license fee herein required," undoubtedly refer to the payment by the person or persons for the license, and who have forfeited the privileges and rights conferred upon them by the license, and do not refer to any contemplated repayment before prosecution.

In the absence of a statute authorizing it, the licensee is not entitled to a rebate for the unexpired term upon revocation. Such a return is dependent upon the statute, and, where there is no statute, the licensee must be held as taking his license subject to such laws as prevail. 14 Current Law, p. 324, and cases cited; *McGinnis* v. *Inhabitants of Medway*, 176 Mass. 67 (57 N. E. 210); *Toman* v. *Town of Westfield*, 70 N. J. Law, 610 (57 Atl. 125); *City of Louisville* v. *Cain*, 134 Ky. 76 (119 S. W. 763); Joyce on Intoxicating Liquors, § 330, and cases cited.

We find no error in the record, and the conviction of the respondent is affirmed, and the trial court is directed to proceed to judgment.

MCALVAY, BLAIR, OSTRANDER, and BIRD, JJ., concurred.