EASTWOOD PARK AMUSEMENT COMPANY *v.* MAYOR
OF EAST DETROIT.

1. GAMING—USE OF MERCHANDISE IN PAY-OFF.
    Even though customers at amusement park wherein gambling
    games are conducted are paid off in merchandise instead of
    money, it is still proscribed by statute (CL 1948, § 750.-
    372).

2. SAME—BINGO.
    Bingo is forbidden by law and is not sanctioned even though
    charitable and other nonprofit organizations are permitted
    to conduct such games with impunity.

3. EVIDENCE—JUDICIAL NOTICE—SUPREME COURT RECORDS.
    The Supreme Court takes judicial notice of the contents of its
    own records.

4. LICENSES—REVOCATION.
    A license to operate an amusement park may be revoked for rea-
    sons occurring prior to the issuance of the license and known
    to the issuing authority.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur, Gaming and Prize Contests, § 2.
[3] 20 Am Jur, Evidence, § 86.
[5–9, 16–18] 38 Am Jur, Municipal Corporations, § 375; 52 Am Jur,
    Theatres, Shows, Exhibitions, and Public Resorts, §§ 29, 30.
[5–9, 16–18] Validity of statute or ordinance, vesting discretion
    in public officials without prescribing a rule of action.    12
    ALR 1435, 54 ALR 1104, and 92 ALR 400.
[6–8, 17, 18] 33 Am Jur, Licenses, §§ 66, 67.
[9, 10, 18] 11 Am Jur, Constitutional Law, § 152 *et seq.;* 33 Am
    Jur, Licenses, § 5.
[12] 34 Am Jur, Mandamus, §§ 184, 185.
[13] 11, 12 Am Jur, Constitutional Law, §§ 254, 422.
[14–18] 33 Am Jur, Licenses, §§ 2, 21; 38 Am Jur, Municipal Cor-
    porations, §§ 374, 376; 52 Am Jur, Theatres, Shows, Exhibi-
    tions, and Public Resorts, § 28.
[18] 37 Am Jur, Municipal Corporations, § 102 *et seq.*
[20] 28 Am Jur, Injunctions, § 350; 35 Am Jur, Mandamus, § 393.

5. SAME—REVOCATION—ARBITRARY POWER—ORDINANCES.

Since arbitrary power to revoke licenses may not be conferred upon public officers by ordinance, a section of an ordinance attempting to confer power upon mayor of city to revoke license to operate an amusement park "for good satisfactory reasons" is void (City of East Detroit Ordinance No 49, § 18).

6. SAME—REVOCATION—NOTICE—HEARING.

A licensee is entitled to proper notice of legal reasons for revocation and an opportunity for a prompt hearing.

7. SAME—REVOCATION—SUFFICIENCY OF NOTICE.

Notice of revocation of license to operate an amusement park, which merely stated the revocation was for good satisfactory reasons and which action was merely upheld by city council, was insufficient (City of East Detroit Ordinance No 49, § 18).

8. MUNICIPAL CORPORATIONS—LICENSES—AMUSEMENT PARKS—REVOCATION.

A city may not revoke a license to operate an amusement park, issued pursuant to an ordinance, except on a specified showing after notice and hearing upon exact charges filed and upon finding that the licensee either refused to comply with the ordinance, was unable to do so, or was an habitual violator (City of East Detroit Ordinance No 49).

9. SAME—AMUSEMENT PARKS—ORDINANCES—SEVERANCE OF VOID PORTION—LICENSES—REVOCATION.

Where void portion of ordinance regulating amusement parks may be severed and remainder is operable, a revocation of license issued thereunder pursuant to such remainder would be valid (City of East Detroit Ordinance No 49, §§ 16, 18, 21).

10. SAME—ORDINANCES—SEVERING CLAUSE.

If invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance is permitted to stand and be enforced, even without a severing clause.

11. LICENSES—RENEWAL.

Except as a license is issued pursuant to a statute entitling the licensee to a renewal upon compliance with specified conditions, a license to conduct a business confers no rights upon the licensee except during the term specified in the license.

12. SAME—MANDAMUS.

Mandamus does not lie to compel the issuance of a license for which the issuing authority has the power to reject an application.

13. CONSTITUTIONAL LAW—POLICE POWER—PUBLIC MORALS—PUBLIC HEALTH.

It is not within the power of the legislature to make an irrepealable contract as to that which affects the public morals or public health so as to limit the exercise of the police power over the subject matter.

14. LICENSES—OPERATION OF A BUSINESS—CONTRACTS.

The granting of a license by the government to operate a particular business, being an exercise of the police power, does not include any contractual relations whatever.

15. SAME—NATURE OF RIGHT—REVOCATION.

A license is a mere privilege to carry on a business subject to the will of the grantor and it is not property in the sense which protects it under the Constitution; hence, the revocation of a license does not deprive the citizen of his liberty or his property without due process of law.

16. SAME—REVOCATION—ARBITRARY POWER.

The legislature may require a license in the first instance for the carrying on of a certain business or occupation and for the revocation thereof, the latter power being subject to the limitation that it may not be arbitrarily exercised.

17. SAME—REVOCATION—NOTICE—INVALID ORDINANCE.

Municipal license to operate an amusement park was not properly revoked where notice of revocation was based solely on an invalid portion of an ordinance of a home-rule city (City of East Detroit Ordinance No 49, § 18).

18. MUNICIPAL CORPORATIONS—AMUSEMENT PARKS—ORDINANCES— REVOCATION OF LICENSES.

Home-rule city ordinance regulating amusement parks held, valid, notwithstanding a section thereof attempted to confer arbitrary power upon the mayor and city council to revoke such licenses, where such section was severable and remainder provided for a valid revocation (City of East Detroit Ordinance No 49).

19. APPEAL AND ERROR—QUESTIONS REVIEWABLE—RENEWAL OF LICENSE.

Where question of renewal of license to operate an amusement park in a home-rule city is not strictly before the Supreme Court, no order with respect thereto is made, notwithstanding revocation of license involved was not valid (City of East Detroit Ordinance No 49).

20. COSTS—INVALID REVOCATION OF LICENSE BY HOME-RULE CITY.

No costs are allowed in suit by operator of amusement park to restrain home-rule city officers from revoking license to operate the park where revocation made was an invalid one (City of East Detroit Ordinance No 49, § 18).

Appeal from Macomb; Smith (Raymond L), J., presiding. Submitted April 13, 1949. (Docket No. 83, Calendar No. 44,389.)    Decided May 18, 1949.

Bill by Eastwood Park Amusement Company, a Michigan corporation, against Mildred Stark, Mayor of City of East Detroit, and others to restrain revocation of plaintiff's license. Decree for defendants. Plaintiff appeals. Modified and affirmed.

*George A. Francis* and *Wm. Henry Gallagher*, for plaintiff.

*Carl B. Weymouth*, for defendants.

BUTZEL, J.    Since 1927, Eastwood Park Amusement Company, a Michigan corporation, plaintiff, has operated an amusement park at the corner of Eight Mile Road and Gratiot avenue in what was formerly the village of Halfway, Michigan, later incorporated as the city of East Detroit, Michigan. At that time the village of Halfway was a sparsely populated district but since has more than tripled in population. Eight Mile Road separates the city of Detroit from the city of East Detroit. The latter has become a city of many homes, some of which are

across the road from the park and others in its immediate vicinity. Plaintiff secured licenses in accordance with the ordinances herein referred to.

In 1927, the village of Halfway enacted Ordinance No 67 regulating amusement parks as well as other forms of entertainment. This ordinance was superseded in 1939 by Ordinance No 49 of the city of East Detroit, pertinent portions of which are set forth in the margin.*

---

* Ordinance No 49.

"Section 1. No person or persons, company or companies, shall exhibit or maintain in the city of East Detroit any circus, carnival, menagerie, play, game or theatrical exhibition, amusement park or concession, or give any concert, vocal or instrumental, or exhibit any natural or artificial curiosity, or give a show of any kind either free or for which pay is demanded or received, without a license from the council of the city, and for every license granted shall pay the license fee hereinafter specified. No fees may be abated or waived by the council under any circumstances. Where licenses are required annually, the same shall issue not later than May first of each year. * * *

"Sec. 11. The license fee for all amusement parks or amusement places, shall be the sum of $3,000 annually, payable in advance. The license to be issued only to the present company operating the amusement park and not to individual concessions. * * *

"Sec. 16. No person or company receiving a license under this ordinance shall permit any disorderly conduct, gambling or any game of chance or the use of any immoral, profane, or indecent language, or permit the sale, giving away, delivering, drinking or use therein of any kind of beer, wine, malt or intoxicating liquor, or beverage or any kind of beer, wine, malt or, providing beer and liquor may be sold if otherwise authorized by the city council by the granting of a liquor license or permit such

The amusement park over the course of years represents an investment amounting to a very large

place of amusement or exhibition to become and be a place of resort of thieves, prostitutes or other disorderly persons.    *    *    *

"Sec. 18. The council may refuse to issue licenses to the parties and for the purposes aforesaid, and the mayor may revoke any license all ready issued, for good satisfactory reasons which shall be reported to the city council by the mayor at its first session following such refusal or revocation, that any party aggrieved by the action of the mayor in revoking a license may appeal to the city council, and upon due consideration by said city council, the action of the mayor may be reviewed, and the license or its revocation annulled upon a three fourths vote of all of the council elected.

"Sec. 19. Requirements: No such license shall be issued unless such place for which it is issued complies with all laws and ordinances and with all rules and regulations of the building department, the police department and the board of health and in the opinion of the mayor is a safe and proper place to be used as an amusement park or concession stand, and the consent of the neighborhood as required in the following section has been secured. Consent of neighborhood required: No amusement park shall hereafter be established or maintained within the city of East Detroit, unless a petition shall theretofore be filed with the council for at least 10 days, signed by 50 per cent. of the persons owning property within a radius of 5,280 feet of the premises upon which it is desired to establish the amusement park.

"Sec. 20. The licensees shall also deposit with the city weekly, a sufficient sum to maintain a sufficient police force to be entirely under the control and direction of the city. Satisfactory arrangements also shall be made for the carrying of compensation insurance, old age pension, et cetera. All such ar-

sum, its assessed valuation for 1948 being in excess of $275,000. The large number of customers it attracted is shown by the fact that in 1947 the Federal admission tax amounted to $81,500. The amusement park company itself and through its concessionaires carried on many activities. For many years prior to 1948, it held a liquor license which evidently was not renewed because of the opposition of the city council. There was included in the park's activities a roller coaster, also a contrivance that spun in the air and on which patrons took rides and was designated as a "moon rocket ride," and other rides. There were also a penny-nickle arcade, a swimming pool, a roller-skating rink, a ballroom, a midway freak show, et cetera. There were also a large number of various gambling devices openly conducted on the premises.

Evidently the conduct of the park became a source of annoyance and irritation to a very large number of the residents of the city and they strenuously objected to its continuance. A large number, however, favored the park as it employed several hundred persons and obviously brought many people to the

---

rangements, together with all insurance, salaries, et cetera, shall be under the sole direction of the city council of the city of East Detroit, and may, from time to time, be altered by the city council as in their discretion shall see fit.

"Sec. 21. Any violation of this ordinance shall be cause for any revocation of any license issued, and shall be punished by a fine not to exceed the sum of $100 and by imprisonment in the city jail or the county jail for a period not exceeding 90 days, or either, in the discretion of the court, and in the imposition of a fine only, the court may make a further sentence that the offender be imprisoned until such fine is paid, but for a period not exceeding that provided herein."

city.   Many meetings were held for the purpose of
closing the park.   It became a political issue.   A
large number of the residents believed that the park
was demoralizing and a nuisance.   The park was
discussed at meetings of the parent-teacher associa-
tion by Mildred Stark, the present mayor of the city,
and a defendant herein.   At some of the meetings
500 persons attended to protest against the contin-
uance of the park's activities.   Just prior to May 11,
1948, the police made arrests and confiscated gam-
bling paraphernalia consisting of moving rubber
balls having numbers on them and charts on which
the player placed his money; another one where the
player put his money on a number, a wheel was spun
and if it came to rest at the number selected by the
player, he would win.   There was a "pan" game of
a somewhat similar character.   From a reading of
the testimony of plaintiff's own witnesses at the
hearing in the lower court, there can be no question
that continuous gambling was going on.   Previous
to the granting of the 1948 license, officers of the cor-
poration had been found guilty of violating the
State laws forbidding gambling and had been heav-
ily fined, notwithstanding the fact that plaintiff had
disavowed any responsibility for gambling by its
concessionaires.   The claim was made that after the
officers of plaintiff had pleaded guilty of the charge
of gambling in the park, certain concessionaires had
been told by the judge that they could continue gam-
bling, provided customers were paid off with mer-
chandise and not with money.   There was no cor-
roboration of this claim and we are not inclined to
place any importance or credence whatsoever in it.
The continuation of these gambling games even
with the pay-off in merchandise instead of money is
gambling.   See *Sproat-Temple Theatre Corp.* v.
*Colonial Theatrical Enterprise, Inc.,* 276 Mich 127,

in which we cited PA 1931, No 328, § 372 * (Stat Ann § 28.604), which prohibits any lottery or gift enterprise within the State and the disposition of any property, real or personal, goods, chattels or merchandise, et cetera, by virtue of it, and provides punishment for violation thereof. For a very long period bingo games were conducted at the park by a concessionaire who paid $200 a week to plaintiff and a like sum to a well-known organization for the use of its name as sponsor. Plaintiff claimed that charitable and other nonprofit organizations were permitted to conduct bingo games with impunity. Even if this be true it does not in any way legalize bingo forbidden by law. *Society of Good Neighbors* v. *Mayor of Detroit*, 324 Mich 22. We have given only a brief statement of some of the facts in the case as disclosed at the hearing.†

On May 12, 1948, Mildred Stark, mayor of the city of East Detroit, caused a notice of revocation to be served on plaintiff. It was stated therein that it was given in accordance with the authority vested in her by section 18 of the original ordinance of the village of Halfway and by section 18 of Ordinance No 49 set forth in the margin. It specifically quoted the words thereof "a mayor may revoke any license

---

* CL 1948, § 750.372.—REPORTER.

† In reviewing this case, we are mindful of our own records where we refused a writ of habeas corpus less than a year prior to the revocation in question in this case. The secretary and treasurer of plaintiff corporation was denied the writs of habeas corpus and certiorari in a case in which he was adjudged guilty of contempt in the circuit court for the county of Macomb, and where the judge in his return to this Court certified that the petitioner had been and was one of the persons connected with the operation of Eastwood Park, and during the course of the previous 6 years slot machines and other gambling equipment had been in use in Eastwood Park, and, further, that in August, 1944, when it was learned that raids would be made and certain gambling machines be confiscated the following day, other, less valuable machines were substituted to be taken away by the police and destroyed. We refused to grant the writs. This, however, was not called to the attention of the trial court at the hearing but we cannot overlook our records. See File 43,839–1/2 Supreme Court records.

already issued for good satisfactory reasons.". This was the only reason stated. Plaintiff immediately upon receiving the notice filed a bill of complaint to restrain the revocation, and the court issued a temporary restraining order effective until plaintiff had presented to the council its appeal from such order and the decision of the council had been filed with the court. Mrs. Stark, the mayor, the councilmen and the city of East Detroit were made defendants in the case. In the amended bill filed by plaintiff it is shown that a hearing was held before the full council and the mayor presented 17 reasons why the license should be revoked. In the foregoing presentation of facts, we have only referred to a number of these reasons which, if true, would be sufficient reasons for revocation had proper notice been given. Counsel for plaintiff, who was present at the meeting of the council spoke at length in opposition to the revocation for the reasons assigned therefor. The council by a majority vote of 3 to 1, approved the action of the mayor in revoking the license. In the amended bill filed by plaintiff to restrain the revocation of the license, the city, its mayor and members of the council are made defendants. Defendants filed an answer claiming that the license was properly revoked and also plaintiff, by acquiescence in the issuing of licenses, could not now attack the constitutionality of the ordinance. The judge after a full hearing entered a decree dismissing the bill. Plaintiff appeals.

Reviewing the testimony *de novo,* we find that a revocation of the license would have been fully and amply justified had proper notice been given. In justice to plaintiff it should be stated that when confronted with the revocation, or the threat thereof, it did offer to correct some of the nuisance features in the conduct of the park and that of the crowd that patronized the park. Under section 20 of the ordi-

nance, as set forth in the margin, licensees are required to deposit with the city weekly a sufficient sum to properly police the park under the control and direction of the city. The attorney for plaintiff offered, in accordance with the suggestion of the prosecuting attorney, to have the park provided with patrol cars and to pay for officers to patrol the streets and protect patrons who had to wait for buses and others, who were on the streets for several hours after the closing time of the park.

Plaintiff calls attention to the fact that the 1948 license was issued after the officers of plaintiff had been found guilty of gambling by the circuit court for the county of Macomb and claims, therefore, defendants should not have revoked the license for previous offenses. In *Powers* v. *Secretary of State,* 312 Mich 315, we held the secretary of State is not estopped to deny license to applicant automobile dealer for one year for reasons occurring prior to that year even if known by the secretary of State previous to issuance of former license. In that case the Court upheld the secretary of State in refusing to renew the license of a dealer in automobiles because of the findings of fact by the secretary of State as to the past acts of the dealer. The testimony shows that gambling paraphernalia was seized but 3 days before the date of notice of revocation in the instant case.

Plaintiff's main claim is that the revocation is of no force or effect because the notice stated that it was based upon section 18 of the ordinance of 1939, as set forth in the margin, and the notice quoted the clause in section 18 that the mayor may revoke any license already issued for "good satisfactory reasons." Attention is called to the fact that arbitrary power may not be conferred upon public officers by ordinances and these very same reasons for revocation "for good satisfactory reasons" were found to

be fatally defective in *Postal* v. *Village of Grosse Pointe,* 239 Mich 286. Attorney for defendants concede that section 18 in itself is void.

At the hearing of the instant case, the trial judge held that section 18 of the ordinance as printed in the margin did not meet the constitutional test. He held, however, that the other provisions of the ordinance were sufficient to fully justify the revocation and he held that the revocation was legal and proper. Under the case of *Postal* v. *Village of Grosse Pointe, supra,* section 18 is insufficient in that it deprives the plaintiff of the legal safeguards it is entitled to before the license can be revoked. Plaintiff was entitled to proper notice of legal reasons for revocation and an opportunity for a prompt hearing. The notice as given by the mayor revoking the license for good and satisfactory reasons did not set forth any other reasons. Section 18 in itself does not set up any standard and inasmuch as the subsequent action of the council simply upheld the mayor in her notice of revocation of the license, the notice of revocation was insufficient. Also, see *Devereaux* v. *Genesee Township Board,* 211 Mich 38; *Samuels* v. *Couzens,* 222 Mich 604; *Harrigan & Reid Co.* v. *Burton,* 224 Mich 564 (33 ALR 142). In the recent case of *Prawdzik* v. *City of Grand Rapids,* 313 Mich 376 (165 ALR 1165), we held (syllabus):

"A home-rule city commission may not revoke the license of a restaurateur which it had theretofore issued pursuant to ordinance except on a specified showing after notice and hearing upon exact charges filed and upon finding that licensee either had refused to comply with the ordinance, was unable to do so, or was an habitual violator."

The judge in the instant case was correct, however, in stating that the ordinance contained other sufficient provisions so as to fully justify the revoca-

tion of the license, without considering provisions of section 18. It will be noted that the case of *Postal* v. *Village of Grosse Pointe, supra,* referred to the issuance of a license, no question was raised in regard to the violation of the terms of the ordinance. In the instant case, sections 16 and 21 are complete in themselves in regard to revocation and section 19 refers to the issuance of a license. After eliminating section 18 in its entirety, the ordinance is complete in itself. Had a good and proper notice of revocation been given setting forth the specific violations of section 16, and that the city was proceeding in accordance with section 21 to revoke the license, and had plaintiff thereupon been given a prompt hearing, it would have satisfied the due process clause to which plaintiff is entitled.

It is the law of this State that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance be permitted to stand. *Melconian* v. *City of Grand Rapids,* 218 Mich 397, involved the validity of an ordinance regulating and licensing the operation of taxicabs. The Court held 2 sections of the ordinance were unconstitutional but that the remainder of the ordinance was good. The Court said:

"Except as herein pointed out, we think the provisions of the ordinance are valid and enforceable. The sections or parts of sections which are invalid are distinctly separable from the remainder. Those held valid constitute in themselves a complete enactment, and may be enforced. *City of Detroit* v. *Railway Co.,* 95 Mich 456 (20 LRA 79, 35 Am St Rep 580); *People* v. *Armstrong,* 73 Mich 288 (2 LRA 721, 16 Am St Rep 578); 28 Cyc p 372."

Also, see *People* v. *Eberle,* 167 Mich 477; *People* v. *McMurchy,* 249 Mich 147.

The rule is stated in McQuillin, Municipal Corporations, 1947 Cum Supp § 862, as follows:

"Even without a severability clause, if the different parts of the ordinance are severable and independent of each other, and the provisions which are within the constitutional power of the legislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the ordinance itself that it was the intent of the legislature to enact these provisions irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if these provisions were not there."

In support of this statement he cites *People* v. *Commons,* 64 Cal App Supp2d 925 (148 P2d 724, 729), which relied on *Hale* v. *McGettigan,* 114 Cal 112, 119 (45 P 1049), which was cited with approval in *Bacon Service Corp.* v. *Huss,* 199 Cal 21, 33 (248 P 235, 240). The first of these cases involved an ordinance a part of which was held invalid and the California court, appellate division of the Superior Court, relying on the other two cases held that even though the ordinance contained no severability clause the void parts if not dependent on any other parts of the ordinance nor essential to any other parts of the ordinance could be eliminated and the rest of the ordinance held valid and enforceable.

The license itself expires by its own limitation on May 1, 1949. Defendants contend that by the time an opinion is rendered in this Court the entire question will have become moot and, therefore, the question of revocation need not have our further consideration. We invited briefs on this question. Plaintiff contends that inasmuch as arrests have been made prior to May 1, 1949, and it appears that numerous further arrests will be made and that the mayor has openly proclaimed that she will grant no license to plaintiff for the current year, that though

no specific relief can be given from the revocation, the validity thereof is important and should be discussed. It is quite obvious that neither the mayor nor the council will grant a new license for the one that has expired. Under section 1 of Ordinance No 49 a license is required annually, to be issued not later than May 1st of each year. The general rule is stated in 2 ALR2d pp 1239, 1242, which refers to a liquor license:

"Hence, in the absence of statutory provisions to the contrary, as a general proposition, the position of an applicant for the grant or renewal of a liquor license is not improved by the fact that he had been granted such a license in the past.

"Although, as regards liquor licenses, this rule is often supported by a reference to the fact that a State has the power to prohibit the liquor traffic altogether, it applies equally to other kinds of licenses which expire after a lapse of a specific period, such as licenses to operate an airport, a broadcasting station, a theater, or an automobile drivers school."

In *State, ex rel. Interstate Air-Parts, Inc.,* v. *Minneapolis-St. Paul Metropolitan Airports Commission,* 223 Minn 175, 187 (25 NW2d 718), relators applied for licenses to operate airports which were refused as defendant would not approve them as provided by statute. Relators had operated under prior licenses but not for the immediate preceding year. In upholding the refusal of the licenses the court said:

"A license confers upon the licensee the right to engage in the licensed business only for the term specified in the license. A prior expired license is *functus officio* and confers no rights upon the licensee named therein, except in certain cases where by statute it entitles him to a renewal upon compliance with specified conditions. *State* v. *Hovorka,* 100 Minn 249 (110 NW 870, 8 LRA NS 1272, 10 Ann Cas

398).  Relators do not claim or have such statutory
license renewal rights.  They are applying for new
licenses.  In such cases, their application for a li-
cense stands upon the same basis as if they never
had been licensed (citing cases)."

See, also, *Paron* v. *City of Shakopee,* 226 Minn 222
(32 NW2d 603, 2 ALR2d 1227).

In *Liggett Drug Co.* v. *License Commissioners of
City of North Adams,* 296 Mass 41 (4 NE2d 628),
petitioners sought by mandamus to compel defend-
ants to issue licenses for the sale of food as common
victualers.  Petitioners had held prior licenses and
had invested considerable money in fixtures and fa-
cilities for such service and were applying for an-
nual renewal of their licenses which were refused.
The court denied any relief to petitioners on the
ground that the reasons for the refusal were suffi-
cient and saying:

"The petitioners had no right to a renewal of a
license.  *Burgess* v. *Mayor & Aldermen of Brockton,*
235 Mass 95, 100 (126 NE 456).  They were entitled
only to fair treatment."

In *Bryant* v. *Detroit Common Council,* 169 Mich
299, we said (syllabus):

"A saloon keeper was not entitled to a preference
over other applicants for retail license because he
had been engaged in the business during 1909, and
during the year preceding his application, which he
filed before April 15, 1911, 1,772 applications having
been filed, of which the council of the city of Detroit
granted the maximum allowed by law, *i.e.,* 1,552.
Mandamus does not lie in such case to compel the
granting of relator's application, which the council
was authorized to reject under PA 1909, No 291."

In *Johnson* v. *Liquor Control Commission,* 266
Mich 682, action of mandamus was brought to com-
pel the liquor control commission to set aside an

order revoking plaintiff's license. In denying the writ the Court quoted the following with approval from *People* v. *Schafran,* 168 Mich 324:

"The licensee has no vested property right in his license; in fact, it would not be in the power of the legislature to make an irrepealable contract as to that which affects public morals or public health so as to limit the exercise of the police power over the subject matter. * * *

"We have already covered the first, second, and third requests to charge, and have said that a license to sell liquor is not a contract, but only a promise to enjoy the privilege on the terms named for a specified time, unless it be sooner revoked. The granting of a license is an exercise of police power, and does not include any contractual relations whatever. *Stone* v. *Mississippi,* 101 US 814 (25 L ed 1079). A license is a mere privilege to carry on a business subject to the will of the grantor, and it is not property in the sense which protects it under the Constitution. The revocation of a license does not deprive the citizen of his liberty or his property without due process of law."

*Case* v. *Liquor Control Commission,* 314 Mich 632, was an appeal from an order of the liquor control commission revoking plaintiff's license. In upholding the commission the Court said:

"Appellants further contend that inasmuch as a showing was made of a violation occurring in 1944, the Michigan liquor control commission did not have the power to revoke a license issued May 1, 1945, for the ensuing year. Good moral character in licensees is of paramount importance in determining whether the privilege of engaging in the liquor business should be continued. No one has an inherent right to a license. It is a privilege granted by the State under proper restrictions and after careful examination."

In *Johnson* v. *Commissioner of Agriculture,* 314 Mich 548, plaintiff sought to review proceedings revoking certain milk dealers' licenses. In upholding the right to revoke or refuse renewal of such licenses as provided by statute the Court said:

"It is uniformly recognized that, if the legislature may require a license in the first instance for the carrying on of a certain business or occupation, provision may be made for refusal to renew such license, and for the revocation thereof on reasonable grounds. Such decisions do not rest on the theory of punishment for violation of statutory or regulatory requirements but, rather, on the basis of protection to the public. The power of revocation is subject to the limitation that it may not be arbitrarily exercised."

In *Morse* v. *Liquor Control Commission,* 319 Mich 52, the Court said:

"Notwithstanding that the liquor business is entirely lawful, no one has an inherent right to a liquor license which is a privilege granted by the State under proper restrictions. *Case* v. *Liquor Control Commission,* 314 Mich 632. A liquor license is not a contract in the sense that the licensee has thereby acquired any vested or property rights, but is in the nature of a permit subject to the control of the State in the exercise of its police power. *Fitzpatrick* v. *Liquor Control Commission,* 316 Mich 83 (172 ALR 608)."

However, the question of the renewal of a license, strictly speaking, is not before us, although the petition for the restraining order indicates that we should enjoin all further arrests for activities of plaintiff or its concessionaires. We do hold that the license itself was not properly revoked; that the ordinance is good and valid with the objectionable section 18 entirely deleted, and that the remaining provisions of the ordinance provide that a li-

cense may be revoked; that the license expires by its own terms on May 1, 1949. Plaintiff in its petition for a stay has indirectly injected the question of the renewal of the license in its statement that there will be no renewal of the license. However, as the question of renewal is not strictly before us, no order will be made in regard to it.

A decree will be entered in accordance with this opinion. No costs will be allowed.

BUSHNELL, REID, NORTH, DETHMERS, and CARR, JJ., concurred with BUTZEL, J.

SHARPE, C. J., and BOYLES, J., concurred in the result.