## TOWER REALTY CO. v. CITY OF EAST DETROIT, MICH.

### No. 11179.

United States Court of Appeals
Sixth Circuit.

Dec. 15, 1950.

Wm. Henry Gallagher, Detroit, Mich. (Wm. Henry Gallagher, Detroit, Mich., George A. Francis, St. Clair Shores, Mich., on the brief), for appellant.

Carl B. Weymouth, East Detroit, Mich., for appellee.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

This appeal involves a challenge to the constitutional validity of an ordinance of the City of East Detroit which governs the licensing and operation of amusement parks, and presents questions as to the presence of standards set up in the ordinance governing compliance therewith. A basic question of federal jurisdiction is also involved and this necessitates a somewhat detailed narration of events leading to the present controversy and the relationship of the parties thereto.

Much of the earlier history of the amusement park here involved is recited in Eastwood Park Amusement Company v. Mayor of East Detroit, 325 Mich. 60, 38 N.W.2d 77. There it appears that since 1927, a Michigan corporation known as Eastwood Park Amusement Company had operated the park in what was formerly the Village of Halfway, Michigan, later incorporated as the City of East Detroit. Halfway was at the time a sparsely populated district contiguous to the City of Detroit. It has since more than tripled in population and become a city of many homes. The Park Company operated under annual licenses pursuant to the provisions of the city ordinances, the last of such ordinances being No. 49, the validity of which is here assailed. Over the course of years the Park has developed so that in 1948 it represented an assessed valuation of $275,000. For many years it held a liquor license, which has not been renewed. Within the Park's activities are a roller coaster, swimming pool, skating rink, ballroom, freak show, and other entertainment facilities familiar to such places. There were also a large number of gambling devices openly conducted on the premises. Previous to the granting of the 1948 license, officers of the corporation had been found guilty of violating state laws forbidding gambling and had been heavily fined. In May of 1948 the Mayor of the City gave notice of revocation of the license in accordance with authority supposed to be vested in her by § 18 which provided that a Mayor may revoke any license for good and satisfactory reasons. The Park Company sued to restrain the revocation. The Circuit Court adjudicated § 18 as constitutionally invalid because of the failure of the ordinance to set up reasonable standards for compliance, and the Supreme Court affirmed.

In affirming, however, the Supreme Court reviewing the testimony de novo, concluded that there were other provisions of the ordinances which would have justified revocation had the notice included as grounds the violation of such provisions, and had the facts supported the violations. It also announced the law of the State to be that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative, the remainder of the ordinance must be permitted to stand, citing Melconian v. City of Grand Rapids, 218 Mich. 397, 188 N.W. 521. Since the 1948 license would expire by its own limitation on May 1, 1949, no attempt was made by the City to again exert its power of revocation. It apparently awaited an application for renewal of the license for the year 1949. Such application was made and by the City denied, whereupon the Amusement Company brought a second suit praying an injunction restraining the City and its officers from interfering with the operation of the Amusement Park, assailing ordinance No. 49 as unconstitutional, and in the alternative seeking a mandatory injunction requiring the granting of a license to it. The City's cross-bill asked for an injunction restraining the Park Company from operating. From a decree dismissing the bill and restraining the Park Company from operating without a license, there was an appeal which was disposed of by the Michigan Supreme Court in Eastwood Amusement Company v. City of East Detroit, 328 Mich. 272,

43 N.W.2d 851. This was announced on Septemebr 11, 1950, holding the provisions of § 19 of the ordinance to contain a sufficient basis for determination of the eligibility of an applicant for a license and to confer no arbitrary power upon the Mayor and the Council. It also held § 1 of the ordinance requiring a license as a prerequisite to the operation of an amusement park and § 16 forbidding licensees to permit gambling and other evils, as well as other sections of the ordinance, severable from the rest, complete and operative in and of themselves and so valid and enforcible. Whether some of the conclusions of the Michigan court are or are not dicta does not concern us, since we are required to ascertain local law from "all available sources." West v. American T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139. The decree was therefore affirmed.

While the above cause was pending, but before decision, the appellant, Tower Realty Company, on February 3, 1950, filed its application for a license to operate the amusement park, reciting that the applicant was prepared to file insurance policies required by the ordinance. It also tendered performance of all lawful requirements, and proposed to operate its business on the site of the present Eastwood Park. It recited that the applicant is a Delaware corporation. In March of 1950 the appellant filed its present suit in the district court. It recited that it had been licensed to do business in Michigan; that jurisdiction was based upon diversity of citizenship; that it did not require a license to operate an amusement park because the various sections of the licensing ordinance were constitutionally invalid, and their invalidity rendered the entire ordinance void. Invalidity was based upon amendments to the Federal Constitution. It also recited that since the filing of its application several meetings of the City Council had been held but that the Council had failed to take any action on its application or to fix and determine any requirements as a basis for granting it. It therefore prayed for a judgment declaring the ordinance and its several provisions void, that in the alternative the court determine and declare which of the said provisions are valid and subject to compliance, and further to declare that it was entitled to the issuance of a license upon compliance with valid provisions, if any.

Upon issue being joined the appellant sought a summary judgment on the ground that the questions involved were wholly questions of law. The district judge thought it inappropriate for him to rule upon the motion while the case was pending in the Supreme Court of Michigan and awaiting decision there, even though concluding that jurisdiction existed in the federal court. His tentative opinion to that effect was filed on May 13, 1950. The appellant, however, being anxious to operate during the 1950 season, pressed the court vigorously for decision, and its insistence resulted in a further opinion of the court adopting the conclusions of its tentative opinion but dismissing the complaint on the ground that the constitutional questions asserted were involved in the state court proceedings, and that if decision was adverse to the appellant it could seek review as permitted by Title 28, § 1257 U.S.C.A.

The first question we meet is, we think, one of jurisdiction. Jurisdiction was asserted by the appellant and assumed by the court upon the authority of Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 48 S.Ct. 404, 405, 72 L.Ed. 681. While the suit below was dismissed and the City had neither cause nor opportunity for appeal, it becomes our duty, of our own motion, to consider the question of jurisdiction. In the cited case the Supreme Court held that the "motives which induced the creation of respondent to become successor to its Kentucky grantor and take a transfer of its property have no influence on the validity of the transactions which are the subject of the suit." This conclusion was based, however, upon a determination that the "succession and transfer were actual, not feigned or merely colorable", and that "In these circumstances, courts will not inquire into motives when deciding concern-

ing their jurisdiction. McDonald v. Smalley, et al., 1 Pet. 620, 624, 7 L.Ed. 287. It is enough that respondent is the real party in interest. Smith et al. v. Kernochen, 7 How. 198, 216, 12 L.Ed. 666." This leads us to the view that while motive is not conclusive, the reality of the successor company is. In other words, the question is whether the plaintiff is the real party in interest. This was well expressed in the Eighth Circuit in Amalgamated Clothing Workers v. Curlee Clothing Co., 19 F.2d 439, where the court said, "The real question is one of law and is whether the Delaware corporation was, under these circumstances, so independent and free as to this property and business that it can appear in a federal court as a litigant * * *. The motive with which this is done is not always controlling. The test is whether it is done with the purpose and in such a manner as to work a fraud upon the federal court by creating a temporary and, in reality, a spurious citizenship. Where the purpose is merely to create diversity of citizenship for such temporary or special purpose and where the power remains to annul this diversity as soon as it has served such purpose, there is such fraud."

■■ While the question is one of law it depends upon facts which have not here been developed. We are left completely in the dark as to the Tower Company. We do not know who are its shareholders or its officers, what interest it has in Eastwood Park or whether there has been an assignment, deed or lease. Neither its application to the City Council nor its bill of complaint throws any light on such matters. The appellant in its brief calls it an *agency* and is frank in stating that the only purpose of its creation was to bring the controversy into the federal court. But for whom it is an agency, or whether by the term "agency" it is meant merely that it is an entity for the purpose of creating diversity of citizenship, is left to speculation.

It is our view, therefore, that upon the present record the question of jurisdiction cannot here be intelligently decided and that the case must go back to the district court for the taking of evidence that will throw light upon the relationship of the original to the successor company with appropriate findings thereon. Facts to be considered in arriving at findings include the fact that there are now pending, as far as we are advised, two applications for license for the year 1950, one by Eastwood and one by Tower, and also the fact, so far as we are presently advised, that there has been no dissolution of Eastwood Park Corporation. If, as concluded in the Amalgamated Clothing Workers case, supra, there still remains either the purpose to or the power of Eastwood to retain its present facilities, then Tower is a mere fiction and may be disregarded in considering the question of jurisdiction. See also Washington Cleaning & Dyeing Co. v. Cleaners', Dyers' & Pressers' Union, 8 Cir., 34 F.2d 897.

■■ If, upon trial, Tower is found to have a business purpose, that the facilities of Eastwood in carrying out that purpose, have been acquired in a genuine and permanent transaction, then the court should, we think, consider carefully the meritorious questions raised and decide them with appropriate conclusions of law. In doing so consideration, of course, should be given to the views of the Michigan Supreme Court, with this observation, however, that while we are obliged to apply its decisions where local law is concerned, in determining invasion of the United States Constitution, federal constitutional law furnishes us with the controlling principles of decision, and that one may not under familiar principles, challenge the validity of a statute unless one is to suffer by its enforcement.[1]

Reversed and remanded for further proceedings consistent herewith.

1. The contention that the ordinance creates a monopoly would seem to be un-

available to a litigant who actively seeks the very monopoly it condemns.