**John KUDLA, Plaintiff,**

v.

**Elmer MODDE and the City of Sterling Heights, Defendants.**

**Civ. No. 80–30009.**

United States District Court,
E. D. Michigan, S. D.

Feb. 2, 1982.

Michael J. Palid, H. Wallace Parker, Bloomfield Hills, Mich., for plaintiff.

Paul J. O'Reilly, Fred M. Cross, Jr., Neil J. Lehto, Sterling Heights, Mich., for defendants Elmer Modde and City of Sterling Heights.

George G. Matish, Joseph N. Baltimore, Thomas B. Serowik, Detroit, Mich., for City of Detroit.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This matter is presently before the Court on defendants' motion for summary judgment.

*Procedural History*

John Kudla, plaintiff, filed his complaint on February 21, 1980, seeking to permanently enjoin defendants from revoking his Class "C" refrigeration license and praying for monetary damages under 42 U.S.C. § 1983. Upon the Magistrate's Memorandum Opinion and Recommendation of February 2, 1980, this Court preliminarily enjoined the defendants on July 16, 1980 from revoking or suspending plaintiff's Class "C" license.

On February 21, 1981, a second Memorandum Opinion and Order was issued by this Court in relation to the preliminary injunction because defendants had agreed to conduct an administrative hearing before the proper authority pursuant to City of Sterling Heights Ordinance 174. The hearing, conducted by the Sterling Heights Mechanical Board of Appeals, was held to determine whether plaintiff was qualified under local regulations, to hold a Class "C" license.

*Facts*

The file in this matter, which includes a transcript of the hearing before the Sterling Heights Mechanical Board of Appeals, shows the following facts. They are not in dispute.

John Kudla, is a refrigeration and air conditioning contractor with his principal place of business in Sterling Heights. He has held a Class C Freon Unlimited License from the City of Sterling Heights since about 1971 through the present and has built a successful business doing work which requires a Class C Freon Unlimited License. In August of 1979, the City of Sterling Heights and City Building Official Elmer Modde were notified by the City of Detroit Board of Examiners (which by ordinance sits as the Board of Examiners for the City of Sterling Heights) that plaintiff's Class C license was issued in error by the City of Sterling Heights in 1971 because

plaintiff had never passed the necessary examinations for Class C licensing given by the Board and the error kept perpetuating itself. When the error in issuing the license was brought to defendant Modde's attention, he informed plaintiff by letter that he was to return his Class C license in exchange for a more limited Class B license.

It was at this juncture that the Court intervened and preliminarily enjoined defendants from further action. *See, Memorandum Opinion and Order* of July 16, 1980. As stated above, defendants thereafter afforded plaintiff a full hearing on the issue of his qualifications. In light of that hearing the Board determined that plaintiff failed to meet the requirement of Section 8–89 which states in pertinent part: "license shall be issued only to applicants who have passed the required examination..." Evidence adduced at the hearing clearly shows and plaintiff admits that he failed the examination around 1968 when he scored a 10% and that he has never passed such an examination.

*Discussion*

Asserting they have cured any procedural deficiencies which may have occurred (without admitting to same), defendants now move for summary judgment. The litigants frame the issues as follows:

"(A) Does the plaintiff have a property right in a Class "C" refrigeration license he has held since 1972?

"(B) Have the actions of the City of Sterling Heights denied plaintiff due process of law?"

To clarify any misconceptions that may result by the litigants' issue formulation, the Court notes from the outset that plaintiff does not question, as a matter of substantive due process, the constitutionality of the ordinance under scrutiny. *Cf. Hudler v. Austin*, 419 F.Supp. 1002 (ED Mich. 1976), *aff'd sub nom., Allen v. Austin*, 430 U.S. 924, 97 S.Ct. 1541, 51 L.Ed.2d 769. Nor does plaintiff argue that the hearing held before the Board is procedurally deficient, e.g. that he was denied a "meaningful opportunity to present his case in a manner calculated to achieve a fair result." *Frum-*

*kin v. Board of Trustees*, 626 F.2d 19, 21 (CA 6, 1980).

The Court would note further that because defendants agreed to hold and in fact did hold a hearing in conformity with the requirements of procedural due process, the issue of whether a person inadvertently or mistakenly granted a license possesses a property interest protected by the due process clause is moot. *Costarelli v. Panora*, 423 F.Supp. 1309 (D Mass. 1976), *aff'd* 431 U.S. 934, 97 S.Ct. 2644, 53 L.Ed.2d 252; *Tollett v. Laman*, 497 F.2d 1231 (CA 8, 1974).

Rather, plaintiff claims under 42 U.S.C. § 1983 that his right to due process was denied because the Board's determination to revoke the Class "C" license is inconsistent with Section 8–93 which permits revocation of a license only for "gross incompetence, gross neglect, deliberate misrepresentation or wilful failure to comply with the requirements of the ordinance." Inherent in plaintiff's argument is the supposition that a license once granted by whatever means, becomes irrevocable less the standard set in Section 8–93.

In the context of the legal and procedural posture of this case, the Court must disagree. It is clear that the imposition of a license for the privilege of pursuing a vocation or business is permissible. *Miller v. Michigan State Apple Commission*, 296 Mich. 248, 296 N.W. 245 (1941). Inclusive in the authority to license is the power to prescribe qualifications for such a practice. *Cf. Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1888); *People v. Murphy*, 364 Mich. 363, 110 N.W.2d 805 (1961). Intrinsic in this long-held view is the proposition that "[t]he power of the state to require a license implies the power to revoke a license which has been improperly issued." *Butcher v. Maybury*, 8 F.2d 155, 159 (CA 9, 1925).

Turning to Michigan jurisprudence, the rights of a licensee were stated as follows in *People v. Schafran*, 168 Mich. 324, 330, 134 N.W. 29 (1912):

"The licensee has no vested property right in his license; in fact, it would not

be in the power of the legislature to make an irrepealable contract as to that which affects the public morals or public health so as to limit the exercise of the police power over the subject matter."

*Accord, Eastwood Park Amusement Co. Inc. v. Mayor of East Detroit*, 325 Mich. 60, 38 N.W.2d 77 (1949).

The law of licensure in Michigan was summarized as follows in *Midwest Teen Centers Inc. v. City of Roseville*, 36 Mich. App. 627, 632, 193 N.W.2d 906 (1971):

"A license is a mere privilege to carry on a business subject to the will of the grantor, and it is not property in the sense which is protected under the Constitution. *Eastwood Park Amusement Co v Mayor of East Detroit, supra* at 76 [38 N.W.2d 77]. Furthermore, a license ordinarily carries no property or contractual right free from impairment by subsequent legislative action and may generally be suspended or revoked in keeping with its terms at any time by the appropriate authority in the exercise of the police power. C. Rhyne, Municipal Law (1957 ed), § 27–1, pp 638–639."

The Court reproduces the above quote for the limited purpose of dispensing with plaintiff's implicit and explicit assertions that a license once granted for whatever purpose becomes a fixed or inalienable property right. While a license may create a property interest subject to due process protection, it is not inviolable. In light of the above, the Court must reject plaintiff's contention that his license was revocable only for the reasons stated in Section 8–93 because it assumes certain legally required conditions which do not exist. The fact remains undisputed that plaintiff has never passed the mandatory written examination found in Ordinance 174. The Court believes that a strict Section 8–93 analysis attaches only when Ordinance 174 has been fulfilled. With due process being accorded and the fundamental requirement of educational qualification absent, this Court, under the procedural and legal context herein, must grant defendants' motion for summary judgment.

*Conclusion*

Defendants' motion for summary judgment, pursuant to F.R.Civ.P. 56 is hereby GRANTED. The Court however will extend sua sponte its preliminary injunction until March 1, 1982, for plaintiff to otherwise act.

IT IS SO ORDERED.